Opinión de conformidad y disidente emitida por el
Juez Asociado Señor Estrella Martínez.
Estoy conforme con la determinación que acoge la ma-yoría de este Tribunal a los efectos de que en reclamos contra los titulares no aplica el término prescriptivo de dos años establecido en el Art. 42(c) de la Ley de Condominios, Ley Núm. 103-2003 (31 L.P.R.A. sec. 1293f).
De otra parte, disiento de la decisión emitida por la opi-nión mayoritaria que reconoce la aplicabilidad de la doc-trina de incuria, pero concede el remedio de remoción de ciertas estructuras peticionado por el Consejo de Titulares. Ello, a pesar de la inacción injustificada del Consejo de Titulares por más de diez años para tomar las medidas necesarias y convenientes en la buena administración del régimen de propiedad horizontal en un tiempo razonable y contrario al historial legislativo de la Ley de Condominios que apunta la necesidad de requerir diligencia en los recla-mos y la actuación responsable en la defensa del régimen de propiedad horizontal.
*354 I
El Sr. Edwin Ramos Vázquez (Ramos Vázquez) adquirió el 27 de febrero de 1999 el “penthouse” PH-A de dos niveles. En ese momento, el apartamento contenía un hueco en el techo del segundo piso por el cual se accedía a la azotea del Condominio por una escalera interior del apartamento. Sobre el hueco en el área de la azotea, existía una estructura de concreto techada que cubre esa escalera. Igualmente, se habían instalado unas losetas y barandas que ocupan el área que queda inmediatamente sobre el apartamento del señor Ramos Vázquez. A su vez, se colo-caron tiestos con diferentes plantas y estructuras.
Todos los cambios señalados existían al momento de que el señor Ramos Vázquez adquirió el apartamento. Ninguno de los cambios destacados surge del registro, la escritura matriz o los planos del apartamento. Tampoco fueron apro-bados por el Consejo de Titulares. Posteriormente, el señor Ramos Vázquez comenzó en esta área la construcción de un jacuzzi en hormigón y bloques de cemento con sus co-nexiones de agua y luz.
Transcurridos más de diez años desde que el señor Ramos Vázquez es dueño del “penthouse”, el 13 de marzo de 2009, el Consejo de Titulares del Condominio interpuso una demanda en su contra por violar la Ley de Condominios. En síntesis, adujo que el señor Ramos Váz-quez se apropió ilegalmente del área de la azotea y el techo del Condominio que queda justo sobre su apartamento(1) A base de ello, solicitó al Tribunal de Primera Instancia que *355 emitiera un injunction y ordenara cerrar el hueco que mantiene en el techo del apartamento y eliminar las es-tructuras allí ubicadas a los fines de restituir el área a su estado original.
El Tribunal de Primera Instancia emitió urna sentencia parcial a favor del Consejo de Titulares. Mediante ésta, ordenó la remoción de todas las áreas a expensas del señor Ramos Vázquez. Sostuvo su dictamen en que las construc-ciones aludidas tuvieron el efecto de variar el uso y destino de la azotea sin el consentimiento unánime de los titulares, lo que constituyeron actuaciones nulas.
Inconforme, el señor Ramos Vázquez acudió al Tribunal de Apelaciones. El foro intermedio emitió sentencia el 23 de agosto de 2010 en la que modificó la sentencia del tribunal de instancia. En síntesis, alteró el dictamen emitido por el foro primario y dejó sin efecto el interdicto emitido en cuanto a las modificaciones realizadas por los titulares anteriores del apartamento. En cuanto a éstas, concluyó que el Consejo de Titulares estableció un reclamo que es-taba prescrito ya que aplicó el Art. 42(c) de la Ley de Con-dominios, supra. Con relación al jacuzzi, dilucidó que aun estaba en construcción sin el consentimiento del Consejo de Titulares, por lo que el Tribunal de Primera Instancia actuó conforme a derecho.
Como consecuencia de la decisión del Tribunal de Ape-laciones, el Consejo de Titulares acudió ante este Tribunal y cuestionó la determinación de que la causa de acción es-tuviera prescrita. Para ello, argumentó que las construc-ciones fueron contrarias a las disposiciones contenidas en la Ley de Condominios, por lo que no aplica un periodo prescriptivo.
II
Reiteradamente, hemos expuesto nuestro deber de velar por el fiel cumplimiento de las disposiciones contenidas en *356 la Ley de Condominios. A estos fines, hemos sido consisten-tes en aplicar las disposiciones del régimen voluntario se-gún éste fuera constituido. Véanse: Art. 22 — 33 de la Ley de Condominios, 31 L.P.R.A. secs. 1292-1292k; Bravman, González v. Consejo Titulares, 183 D.P.R. 827, 825 (2011); Batista, Nobbe v. Jta. Directores, 185 D.P.R. 206 (2012), opinión disidente Juez Asociado Señor Estrella Martínez.
Como consecuencia, no hemos vacilado en recordar que lo consignado en la escritura matriz gobierna el régimen de horizontalidad y es la fuente a cuyas disposiciones debe-mos acudir para dirimir cualquier conflicto. Véanse: Consejo Tit. Cond. McKinley Court v. Rullán, 126 D.P.R. 387, 394 (1990); Arce v. Caribbean Home Const. Corp., 108 D.P.R. 225, 245 (1978). Ésta debe ser examinada conjunta-mente con los planos sometidos al Registro de la Propiedad. Estos documentos constituyen y consagran grá-ficamente los derechos de los interesados avalados por la fe pública registra! Arce v. Caribbean Home Const. Corp., supra, págs. 257-258.
La escritura matriz constituye la fuente que precisa el destino de toda área del inmueble y la forma en que ésta puede variarse. Véanse: Bravman, González v. Consejo Titulares, supra; Batista, Nobbe v. Jta. Directores, supra; Rivera Rodríguez v. Junta Dir. I y II, 173 D.P.R. 475, 483 (2008).
Como bien expresa la mayoría de este Tribunal, la Ley de Condominios está anclada en la preservación del dere-cho al disfrute de la propiedad privada, en un ambiente de sana convivencia de los condominos. Con ese norte, la Ley de Condominios consagra en su Art. 1-A (31 L.P.R.A. see. 1291 n.) que en el ejercicio y reclamo de sus derechos, se actúe conforme a los principios de buena fe, la prohibición de ir contra los actos propios y la del abuso del derecho. Ese principio aplica a todos los miembros del régimen in-cluyendo al Consejo de Titulares, quien está compuesto por todos los titulares, y posee la indelegable tarea de responder al fin último de la Ley de Condominios para viabilizar *357 el disfrute de la propiedad particular y privada del apartamiento. Para ello, tiene la facultad y obligación de “[intervenir y tomar decisiones sobre aquellos asuntos de interés general para la comunidad así, como tomar aque-llas medidas necesarias y convenientes para el mejor ser-vicio común”. 31 L.P.R.A. sec. 1293b(k).
Para hacer viable la propiedad horizontal, existe un alto interés en promover la estabilidad del régimen. Con ese fin, la Asamblea Legislativa consideró apropiado limitar el tiempo mediante el cual se puede reclamar por los acuer-dos, acciones u omisiones en el régimen. Así se pretendió establecer un término de caducidad de dos años para toda acción de impugnación. Originalmente, se optó por aplicar un término de caducidad a las objeciones contra la Junta de Directores, el Consejo de Titulares y los titulares. Véase P. del S. 1425 de 11 de abril de 2002, 14ta Asamblea Legis-lativa, 3ra Sesión Ordinaria, pág. 48. Ello respondía a la necesidad de reconocer la importancia del “reclamo dili-gente de los derechos, encarnado, en el principio de la in-curia y en las doctrinas de consentimiento tácito y del im-pedimento de ir en contra de los propios actos. El establecimiento de un término de caducidad de dos (2) años viene a reforzar la promulgación para el régimen de los principios generales del derecho enunciados en el Artículo 1-A”. Informe Conjunto de las Comisiones de Vivienda, de Banca y Asuntos del Consumidor, y de lo Jurídico sobre el P. del S. 1425 de 12 de noviembre de 2002, 14ta Asamblea Legislativa, 4ta Sesión Ordinaria, pág. 33.
Esta visión aceptó que la inacción equivale al consenti-miento tácito en aquellas circunstancias donde lo acaecido era permitido por la Ley de Condominios, aunque no se hubiera realizado conforme a las disposiciones contenidas en ésta. Por ello, se expresó que “no debe haber reparos a que la inacción por todos los titulares durante dos años luego de haberse efectuado un cambio que la ley permite tenga un efecto equivalente a la prestación de un consen- *358 timiento unánime”. íd. Véanse, además: Ponencia del De-partamento de Asuntos del Consumidor de 27 de agosto de 2002 con relación al P. del S. 1425, págs. 13-14; Ponencia de Michel J. Godreau Robles del 11 de julio de 2002 con relación al P. del S. 1425, pág. 15; Compendio Revisado de Enmiendas para mejorar el P. del S. 1425 sobre una Nueva Ley de Condominios por Michel J. Godreau de 8 de julio de 2002, pág. 12; Ponencia del Departamento de Justicia del 19 de junio de 2002 con relación al P. del S. 1425, págs. 7-8.
No obstante lo anterior, el historial legislativo refleja que una vez el P. del S. 1425 fue examinado por la Cámara de Representantes, ésta optó por cambiar el término de caducidad a uno de prescripción. Cuando el proyecto fue devuelto al Senado, con enmiendas al texto del inciso (c), éstas tuvieron el efecto de establecer un término prescriptive de dos años para las acciones de impugnaciones enta-bladas contra el Consejo de Titulares y aquellas en que se cuestionaban las determinaciones, omisiones o actuaciones del Director o la Junta de Directores, solamente. El texto aprobado no impuso ese término prescriptivo a las impug-naciones de las acciones u omisiones de los titulares como originalmente se propuso. Véase Entrillado electrónico del texto aprobado en votación final por el Senado, 14 de no-viembre de 2002, pág. 59. En efecto, la aprobación del re-ferido artículo no atendió ni dispuso un periodo en el que se podía instar una reclamación contra un titular.
Hoy, la opinión mayoritaria reconoce ese hecho y atiende la laguna que creó la aprobación del inciso (C) del Art. 42 de la Ley de Condominios, supra. De esta forma, este Tribunal resuelve que en ausencia de un tiempo para impugnar las acciones contra un titular deben prevalecer los principios de la doctrina de incuria para la acción contra un titular. Ese principio aplica a las acciones entabla-das por el Consejo de Titulares mediante la premisa de que a ese cuerpo también le aplican los postulados de la Ley de Condominios sobre la buena fe, la prohibición de ir contra *359 los actos propios y la del abuso del derecho incorporados en el Art. 1-A de la ley, supra. Estoy conforme con tal proceder.
Los principios de la doctrina de incuria están elaborados en la opinión mayoritaria que hoy emite este Tribunal. So-bre ello, recalcamos que la incuria castiga la inacción de una parte por un periodo prolongado de tiempo en impedi-mento para que se provean los remedios solicitados me-diante reclamos traídos a destiempo. Molini Gronau v. Corp. P.R. Dif. Púb., 179 D.P.R. 674, 687 (2010); Comisión Ciudadanos v. G.P. Real Property, 173 D.P.R. 998, 1020 (2008). De igual forma, resalta que la incuria no aplica por el mero transcurso del tiempo y que existen otros factores que deben considerarse para justificar la demora, el perjui-cio que acarrea y el efecto sobre el balance de intereses involucrados.
Con estos preceptos nos corresponde dilucidar, en primer lugar, si el reclamo entablado por el Consejo de Titu-lares fue a destiempo y de no serlo establecer el remedio que procede en las circunstancias del caso ante este Tribunal.
III
Al examinar el expediente ante nuestra consideración surge la descripción del apartamento que le pertenece al señor Ramos Vázquez. En lo pertinente, dispone como si-gue:
[l]ocated on the west side of the building on the eleventh (11th) and twelfth (12th) floors above the ground, facing Mi-ramar Avenue, consisting of two (2) bedrooms, a living-dining room, kitchen and bathroom on the eleventh floor, a circular stairway leading to the twelfth floor and a covered terrace on the twelfth floor. Its main entrance door in on the eleventh floor at the rear of the apartment and opens into the living-dining room....
Las áreas privadas del Condominio que constan en la escritura matriz se describen como:
*360 —Fourth: The above-described building is composed of the following elements:
-----A: - PRIVATE AREA...................... — ..................
---------One. Three apartments on each one of the first nine (9) floors above the ground floor, two apartments and one studio apartment on the tenth (10th) floor and three (3) penthouse apartments on the eleventh (11th) floor with their penthouse roof-terraces and uncovered roof areas on the twelfth r (12th) floor, making a total of thirty three (33) apartments. (Enfasis nuestro).
En cuanto a los elementos comunes, éstos constan des-critos en la cláusula cuarta, inciso B, subinciso cuarto de la escritura matriz, que dispone específicamente:
-----B.-General Common Elements.
-----Four. The stairway and elevators; elevator machine room, water tank and ventilation enclosures on the roof, foundations, columns, and structural walls, driveways and paved areas except parking spaces, hallways on each floor and all the roofs (except as otherwise specified). (Enfasis nuestro).
La escritura otorgada revela que el área del techo sobre el segundo nivel del “penthouse” del señor Ramos Vázquez no le pertenece. Esta no constituye un área privada de su apartamento. No obstante, se describe que los “penthouses” tienen acceso al área sobre su techo. De las esti-pulaciones de las partes resalta que éstas acordaron que lo que realmente existe en la parte superior de los “penthouses” es una azotea y que ésta no formaba parte del inmueble. Por lo tanto, de la descripción registral ex-puesta, concluimos que el área en controversia fue desti-nada como un elemento común voluntario.(2)
Como bien expone la mayoría de este Tribunal, las es-tructuras edificadas en esa área afectan la sobre elevación. Sobre ésta se puede edificar, ya que ello no afecta el vuelo. *361 En cuanto a la perforación en el área del techo, la Opinión mayoritaria de este Tribunal reconoce que es un cambio realizable con el consentimiento unánime de los titulares y los correspondientes permisos. Véase Opinión mayoritaria, pág. 36. Por lo tanto, la mayoría de este Tribunal advierte que cada una de las obras que se pretenden remover po-dían ser realizadas con el consentimiento unánime o por acuerdo de la mayoría de los titulares. Tampoco nos encon-tramos ante la apropiación del techo como un elemento común general necesario. Así, no estamos ante actuaciones nulas en las que no aplica término alguno para su impugnación.
Ahora bien, al aplicar la norma hoy adoptada, este Tribunal, a mi juicio, yerra al ordenar remover las estructuras a expensas del Consejo de Titulares.(3)
Difiero de la aplicación de la norma que hoy se acoge a los hechos del caso. El Consejo de Titulares debe actuar bajo los principios de diligencia en la defensa del régimen de propiedad horizontal. No puede actuar con desidia y mucho menos en abuso del derecho o contra sus propios actos. Resulta impermisible que el Consejo de Titulares aguarde por lo menos diez años para cumplir con su fun-ción y obtener a medias un remedio afectando las acciones que fueron avaladas por el transcurso del tiempo.
Examinado el expediente, no existe justificación alguna para la inacción y dejadez con la que actuó el Consejo de Titulares. Este conocía en todo momento sobre la edifica-ción y las circunstancias en las que se encontraba la azotea del Condominio desde antes de que el señor Ramos Váz-quez adquiriera el "penthouse” hace más de diez años. Re-cordemos que en esa área están ubicados los respiraderos, cisterna de agua y cuarto de máquinas de los ascensores. Ciertamente, el Consejo de Titulares tenía acceso para mantener y mantuvo esas áreas. Como bien apunta la ma- *362 yoría de este Tribunal, “las construcciones objetadas no pu-dieron pasar desapercibidas para el Consejo ni la Junta”. Véase Opinión mayoritaria, pág. 347.
La doctrina de la incuria no avala la inacción por un tiempo prolongado. Castiga a aquel que reclama a des-tiempo, al no proveer los remedios solicitados. El hecho de que se le imponga al Consejo de Titulares el costo de la remoción de las estructuras en esas áreas, a mi juicio, con-valida el desempeño inadecuado y deficiente del Consejo de Titulares. Además, valida la acción incoada a destiempo, en perjuicio del señor Ramos Vázquez, quien adquirió con las consabidas modificaciones, y sin que ningún titular o parte se hubiera opuesto a ello hasta ahora.(4) Por estas circunstancias, entendemos que el Consejo de Titulares no tendría derecho a remedio alguno.
Aunque la incuria no considera sólo el factor del tiempo transcurrido, pesa mucho el que el Consejo de Titulares se haya cruzado de brazos en una actitud de dejadez o desin-terés para hoy pretender impedir el disfrute que el señor Ramos Vázquez ha ostentado pacíficamente por todo este tiempo. No tengo la menor duda de que la tardanza del Consejo de Titulares simple y llanamente constituye una omisión que atenta contra la estabilidad del régimen de propiedad horizontal. Recordemos que, aunque no aplica el inciso (c) del Art. 42 de la Ley de Condominios, supra, el debate acaecido demuestra la indudable visión legislativa de requerir el reclamo diligente de derechos y la actuación responsable en la defensa del régimen de propiedad horizontal. A su vez, impide ir contra sus propios actos y reconoce el consentimiento tácito de las actuaciones acaecidas. Me parece insostenible que el Consejo de Titu-lares, como último órgano administrativo del régimen, ab-dicara su responsabilidad para instar su reclamo luego de *363 una década. No existe justificación alguna para tal dilación.
Por último, aunque ciertamente existe un derecho de copropiedad de los titulares sobre los elementos comunes de la propiedad horizontal, no podemos perder de perspec-tiva que los cambios realizados eran permisibles. Por lo tanto, no estamos ante una situación de reinvidicar el de-recho de propiedad del Consejo de Titulares sobre un ele-mento común, éste derecho se mantiene independiente de los cambios realizados.
Claro está, como expusimos en Bravman, González v. Consejo de Titulares, supra, la Ley de Condominios impide la adquisición por prescripción de los elementos comunes ya sean generales o limitados. Además, la ley impide va-riar el uso y destino sin el consentimiento unánime de los titulares. En el caso de marras esa no es la situación.
La Ley de Condominios permite realizar todo aquello que beneficie a un titular siempre que no se invada o me-noscabe el disfrute de otro apartamento o el derecho de los demás titulares. Incluso, permite ciertas edificaciones no contempladas en los planos del inmueble con el consenti-miento unánime de los titulares. 31 L.P.R.A. sec. 1291i. De igual forma, permite realizar obras necesarias para la con-servación o seguridad del inmueble y para el uso eficaz de los elementos comunes. 31 L.P.R.A. sec. 1291n. Es por ello, que la mayoría de este Tribunal reconoce que los cambios realizados —incluyendo la edificación de la estructura en concreto— son permisibles por la Ley de Condominios. De lo contrario, estaríamos ante una situación no permitida por la ley y el Consejo de Titulares tendría derecho a la totalidad del remedio solicitado en cualquier momento. Ello no es lo acontece en las circunstancias ante nuestra consideración.
Como adelantamos, las áreas en controversia constitu-yen un elemento común designado en la escritura matriz. Sobre éste se realizó una construcción permisible por la *364 Ley de Condominios. A nuestro juicio, ello no implica que de facto se haya apropiado de un elemento común y que se cambie el uso y destino de éste, según consignado en la escritura matriz. Para que se convierta en un área priva-tiva requiere el consentimiento de todos los titulares y una enmienda a la escritura matriz. Según estas circunstan-cias, no existe un cambio en la configuración del aparta-mento del señor Ramos Vázquez ni en los elementos comu-nes que afecte la descripción registral del régimen o prive de su derecho propietario al Consejo de Titulares. El hecho de que la estructura erigida no surja del Registro de la Propiedad no tiene el efecto de cambiar el destino y uso del área. Tampoco es impedimento para conformar el Registro de la Propiedad a la realidad extrarregistral.(5)
La interpretación que la mayoría sostiene conlleva la remoción de lo realizado independiente del tiempo transcu-rrido y que ello sea permitido por la Ley de Condominios. El único disuasivo que se impone es que la remoción se haga a expensas de quien actuó con incuria. A nuestro pa-recer, ello no propicia la estabilidad del régimen cuya fina-lidad el legislador propició al aprobar la Ley de Condominios.
IV
Por los argumentos expresados, confirmaría al Tribunal de Apelaciones por concluir que el Consejo de Titulares ac-tuó con incuria por lo que no es merecedor de remedio alguno.

 Debemos aclarar que en el presente caso el Sr. Edwin Ramos Vázquez no hizo reclamo alguno en torno a haber adquirido la azotea por prescripción adquisitiva. Ello no tendría cabida conforme a lo establecido en Bravman, González v. Consejo Titulares, 183 D.P.R. 827, 825 (2011). El señor Ramos Vázquez solamente tiene a su disposición el uso de un elemento común limitado a los “penthouses”. Siendo ello, el señor Ramos Vázquez nunca podrá adquirir la referida área como una privativa sin el consentimiento unánime de los titulares y la modificación de la escritura matriz a estos efectos. Tampoco podrá limitar su uso a los demás titulares de los “penthouses” por el transcurso del tiempo. Recordemos, que la usucapión no se da en los elementos comunes del inmueble ya sean generales o limitados.

 No nos hacemos eco de las expresiones realizadas sobre lo que constituyen elementos comunes limitados basada en la interpretación mayoritaria acogida en el caso de Batista, Nobbe v. Jta. Directores, 185 D.P.R. 206 (2012). Nos remitimos a nuestra Opinión disidente en el referido caso.

 Estamos conforme en que procede la remoción del jacuzzi a expensas del señor Ramos Vázquez. La construcción de éste tan siquiera había finalizado.

 Véase la estipulación entre las partes que recoge el hecho de que ninguno de los miembros de la Junta de Condominos o residente alguno ha realizado acerca-mientos en los diez años que lleva como residente el señor Ramos Vázquez.

 A estos efectos, recordamos que la mayoría de este Tribunal en Batista, Nobbe v. Jta. Directores, supra, no ordenó enmendar la escritura matriz, a pesar de que se decidió que en ésta constaba designado como elemento común limitado uno de naturaleza privativa. Así, una mayoría de este Tribunal permitió que —en efecto— el Registro de la Propiedad no correspondiera a la realidad que determinó esta Curia. De esta forma, mantuvo una discordancia que surge del registro y la realidad deter-minada sobre un área.