EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Puerto Rico Eco Park, Inc.; Moca Eco Park Corp.; Yauco Eco Park, L.L.C.<br><br>Peticionarios<br><br>V.<br><br>Municipio de Yauco (Junta de Subastas)<br><br>Recurrido<br><br>Waste Enterprises, Corp.<br><br>Parte con interés | Certiorari<br><br>2019 TSPR 98<br><br>202 DPR ____ |

Número del Caso: CC-2019-75

Fecha: 21 de mayo de 2019

Tribunal de Apelaciones:

    Región Judicial de San Juan – Panel VI

Abogado de la parte peticionaria:

    Lcdo. Roberto Abesada-Agüet

Abogado de la parte recurrida:

    Lcdo. Sixto Quiñones Rodríguez

Parte con Interés – Waste Enterprises, Corp:

    Lcdo. Javier José Dilán

Materia: Derecho Administrativo - Requisitos jurisdiccionales para que la notificación de adjudicación de la Junta de Subastas sea adecuada.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Puerto Rico Eco Park, Inc.;
Moca Eco-Park Corp.;
Yauco Eco Park, L.L.C.

    Peticionarios

        v.

                            CC-2019-75     Certiorari

Municipio de Yauco
(Junta de Subastas)

    Recurrido

Waste Enterprises, Corp.

    Parte con interés

Opinión del Tribunal emitida por el Juez Asociado señor Kolthoff Caraballo

(REGLA 50)

San Juan, Puerto Rico, a 21 de mayo de 2019.

En <u>IM Winner, Inc. v. Mun. de Guayanilla</u>, 151 DPR 30 (2000) establecimos las garantías mínimas o advertencias que una Junta de Subastas municipal estaba obligada a consignar en una notificación de adjudicación de subasta para la correspondiente revisión judicial ante el Tribunal de Apelaciones. Hoy nos toca repasar la misma controversia, pero en el contexto de la enmienda de los Arts. 10.006 y 15.002(2) de la Ley de Municipios Autónomos, *infra*, y de la aprobación del Reglamento 8873, *infra*.

**I**

El presente caso se originó cuando Puerto Rico Eco Park, Inc., Moca Eco-Park, Corp., Yauco Eco-Park, LLC (Eco Park) y Waste Enterprises Corp. (Waste) presentaron una solicitud de propuesta de subasta 2018-2019 para la administración y operación del sistema de relleno sanitario (Propuesta) del Municipio de Yauco (Municipio) ante la Junta de Subastas del Municipio (Junta). Luego de varias incidencias que resultan innecesario pormenorizar, la Junta le adjudicó la Propuesta a Waste mediante una *Minuta de adjudicación enmendada para la administración y operación del vertedero municipal serie 2018-2019* (minuta de adjudicación enmendada).[1] En cuanto a las advertencias y a la solicitud de revisión judicial ante el Tribunal de Apelaciones, el contenido de la minuta enmendada era el siguiente:

> [C]ualquier licitador que no esté de acuerdo con esta decisión podrá impugnar ante el Tribunal de Apelaciones de Puerto Rico dentro del **plazo de diez (10) días a partir de la fecha en que el acuerdo haya sido promulgado o comunicado a la parte querellante** de acuerdo con lo establecido en la Ley de Municipios Autónomos del Gobierno del Estado Libre Asociado de [P]uerto Rico, según enmendada […]
>
> Así se hace constar en Yauco, Estado Libre Asociado de Puerto Rico hoy[,] a los treinta días de mes de octubre de 2018.
> .    .    .    .    .    .    .    .
> Certifico haber enviado copia fiel y exacta de esta notificación por correo certificado a las compañías licitadoras **habiendo archivado en autos la original de la Notificación de**

---

[1] Apéndice de la Petición de *certiorari*, págs. 134-135.

**Adjudicación de esta Solicitud de Propuestas el 30 de octubre de 2018**.[2]

En desacuerdo con la determinación, el **15 de noviembre de 2018** Eco Park solicitó la revisión judicial ante el foro apelativo intermedio. Por otra parte, Waste y la Junta solicitaron la desestimación del recurso. Mediante las mociones, éstos argumentaron que Eco Park admitió que la Junta depositó en el correo la minuta de adjudicación enmendada el **2 de noviembre de 2018**, por lo que el recurso se presentó fuera del término de 10 días que dispone el Art. 15.002 (2) de la Ley de Municipios, *infra*. Para acreditar la fecha en que se depositó en el correo la minuta de adjudicación enmendada, tanto Waste como la Junta acompañaron en las mociones el recibo del correo certificado. Por último, adujeron que Eco Park renunció al planteamiento de notificación defectuosa al no plasmarlo como un señalamiento de error en el recurso de revisión judicial.

Entretanto, Eco Park se opuso y esbozó que, a pesar de la admisión involuntaria, del tracto del servicio postal surgía que la Junta presentó la correspondencia en cuestión el 5 de noviembre de 2018 y que la recibió el 6 de noviembre de 2018.[3] Además, alegó que el sobre contenía varias

_____

[2] Apéndice de la Petición de *certiorari*, pág. 135.

[3] Sobre este particular, del tracto del correo certificado del servicio postal no surge la fecha del 2 de noviembre de 2018 como el día en que la Junta depositó la notificación de adjudicación en el correo. El tracto refleja que la correspondencia enviada se entregó en la oficina del correo del Municipio de Vega Baja el 5 de noviembre de 2018 y que el destinatario, es decir Eco Park, la recibió al día siguiente. Apéndice de la Petición de *certiorari*, págs. 111-112.

estampillas postales y matasellos de los cuales el único legible era un sello de 5 de noviembre de 2018, por ello Eco Park entendió que a partir de ese día comenzaba a transcurrir el plazo para recurrir en alzada.

**Finalmente, Eco Park argumentó que la minuta de adjudicación enmendada era defectuosa toda vez que incumplía con el Art. 15.002 (2) de la Ley de Municipio Autónomos,** *infra*, **porque la Junta no señaló en la minuta de adjudicación enmendada la fecha en que ésta se depositó en el servicio postal ni expresó que a partir de ese día se activaría el término para acudir al foro apelativo intermedio.** Aun con los argumentos de Eco Park, el Tribunal de Apelaciones emitió una Sentencia en la que se declaró sin jurisdicción para atender el asunto.

Luego de solicitar sin éxito la reconsideración del dictamen, oportunamente Eco Park acudió ante esta Curia y apuntó el siguiente señalamiento de error:

> El Tribunal de Apelaciones erró como cuestión de derecho en su interpretación del artículo 15.002 de la Ley de Municipios Autónomos. Dicho foro debió declarar la nulidad de la notificación de adjudicación de RFP y ordenar al Municipio de Yauco a notificar nuevamente la misma porque no solo se incumplió con informar la fecha correcta del depósito en el correo, sino que no había manera clara de conocer cuándo en efecto se depositó en el correo la notificación de RFP.

En consideración a la controversia planteada, el 11 de febrero de 2019, emitimos una orden de mostrar causa para que la Junta demostrara por qué no debíamos ordenarle a que nuevamente notificara la adjudicación de la Propuesta.

Luego del cumplimiento con nuestra Resolución, nos encontramos en posición para resolver.

**II**

La subasta tradicional y el requerimiento de propuestas o RFP (*request for proposal*) son métodos mediante los cuales tanto el gobierno central como el municipal adquieren bienes y servicios.[4] A través de ambos mecanismos se protegen los intereses del Soberano ya que procuran conseguir "los precios más económicos; evitar el favoritismo, la corrupción, el dispendio, la prevaricación, la extravagancia y el descuido al otorgarse los contratos, y minimizar los riesgos de incumplimiento".[5] Es evidente que en la medida que haya pureza en estos procedimientos, los entes estatales y municipales promoverán la libre competencia entre los postores.[6]

A diferencia de las formalidades que requiere la subasta habitual, desde R & B Power v. ELA, 170 DPR 606, 621 (2007) indicamos que el RFP se destaca por ser un procedimiento informal y flexible que permite al oferente negociar con el gobierno central o municipal y enmendar o revisar las ofertas antes de la adjudicación de un contrato de adquisición de bienes y servicios.[7] El uso del requerimiento de propuesta -como método alterno a la subasta

---

[4] R & B Power v. ELA, 170 DPR 606, 621 (2007).

[5] Caribbean Communications v. Pol. De P.R., 176 DPR 978, 994 (2009).

[6] Íd.

[7] El caso R & B Power v. ELA, *supra*, es sumamente ilustrativo en lo concerniente a la figura del requerimiento de propuestas en el ámbito de las agencias administrativas.

formal- es común "cuando se trata de bienes o servicios especializados que involucran aspectos altamente complejos o cuando existen escasos competidores cualificados".[8] Además de lo anterior, hemos establecido que del RFP debe surgir "los requerimientos, los términos y las condiciones, así como los factores que han de considerarse en la evaluación para la adjudicación de la subasta".[9] Por la naturaleza informal y flexible de este mecanismo excepcional y la erogación de fondos públicos que implica, se exige que su utilización no se convierta en la norma como un escape a la competencia secreta de la subasta tradicional.[10]

Cabe destacar que, si bien "la subasta formal y el RFP son distintos, no son totalmente incompatibles entre sí".[11] Ello pues, hemos reconocido que un requerimiento de propuestas "participa de características adjudicativas de la misma forma que la subasta tradicional".[12] Por ello, los oferentes o participantes de un RFP pueden cuestionar mediante revisión judicial la adjudicación de una propuesta

---

[8] CD Builders v. Mun. Las Piedras, 196 DPR 336, 345 (2016), Caribbean Communications v. Pol. de P.R., *supra*, pág. 996; R & B Power v. E.L.A., *supra*, págs. 621-622.

[9] CD Builders v. Mun. Las Piedras, *supra*, pág. 346; Véase R & B Power v. ELA, *supra*, pág. 622 n. 5.

[10] R & B Power v. ELA, *supra*, pág. 625.

[11] Caribbean Communications v. Pol. De P.R., *supra*, pág. 998.

[12] R & B Power v. ELA, *supra*, pág. 624.

de subasta.[13] O sea, un RFP no está exento de revisión judicial aunque la legislación no lo disponga.[14]

Ahora bien, tal como en la subasta formal, no existe legislación que regule con uniformidad el método de requerimiento de propuestas o RFP.[15] Según la Ley Núm. 38-2017, conocida como la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, 3 LPRA 9601 *et seq.*, (LPAU), ambos mecanismos se consideran informales y cuasijudiciales y, salvo por la solicitud de reconsideración y revisión judicial, no están sujetos a esta legislación.[16] Significa que "las agencias gubernamentales tienen la facultad de aprobar un reglamento para establecer el procedimiento y las guías que se han de seguir en sus propias subastas".[17]

Sin embargo, debido a que los municipios están expresamente excluidos de la definición de "agencia", a

---

[13] Íd.

[14] Íd.

[15] CD Builders v. Mun. Las Piedras, *supra*, pág. 346.

[16] Caribbean Communications v. Pol. De P.R., *supra*, págs. 993-994. Véase las Secs. 3.1 (2) y 3.19 de la Ley Núm. 38-2017, conocida como la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, 3 LPRA 9601 secs. 9641 y 9659 (LPAU). Es menester mencionar que esta legislación derogó la Ley Núm. 170 de 12 de agosto de 1988, conocida como la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico, 3 LPRA 2101 *et seq.* Por otro lado, en R & B Power v. ELA, *supra*, págs. 624-625, extendimos la aplicación de la sec. 3.19 de la LPAU, *supra*, al requerimiento de propuestas.

[17] CD Builders v. Mun. Las Piedras, *supra*, pág. 346; Empresas Toledo v. Junta de Subastas, 168 DPR 771, 780 (2006); L.P.C. & D., Inc. v. A.C., 149 DPR 869, 875 (1999).

éstos no les aplica las disposiciones de la LPAU.[18] Por ello, tanto las subastas tradicionales como el requerimiento de propuestas que adjudique una Junta de Subastas municipal están reguladas por la Ley Núm. 81—1991, según enmendada, conocida como la Ley de Municipios Autónomos de Puerto Rico, 21 LPRA sec. 4001 *et seq.* (Ley de Municipios Autónomos) y el recién aprobado Reglamento para la Administración Municipal Núm. 8873 de la Oficina del Comisionado de Asuntos Municipales, 19 de diciembre de 2016 (Reglamento 8873). Asimismo, además de regir las subastas formales y los requerimientos de propuestas en los municipios, estos cuerpos de normas gobiernan el derecho de revisión judicial de los licitadores o participantes.

No obstante, aun cuando la Ley de Municipios Autónomos ha reconocido expresamente el derecho de revisión judicial, hace casi 2 décadas tuvimos que establecer las advertencias que una Junta de Subastas municipal tiene que consignar en una notificación de adjudicación de subasta. Así, en IM Winner, Inc. v. Mun. de Guayanilla, 151 DPR 30, 38 (2000), concluimos que:

> [C]onsiderando nuestros pasados pronunciamientos y las exigencias del debido proceso de ley, determinamos que para poder hacer efectivo el derecho de revisión judicial que consagra el Art. 15.002 de la Ley de Municipios Autónomos del Estado Libre Asociado Puerto Rico de 1991, *supra*, en la notificación de la adjudicación de una subasta por parte de la correspondiente Junta de Subastas Municipal, es necesario que se advierta: el derecho a procurar

---

[18]   IM Winner, Inc. v. Mun. de Guayanilla, 151 DPR 30, 33 (2000). En la actualidad la sección correspondiente a la exclusión de las entidades municipales como agencia es la Sec. 3.1 (5) de la LPAU, 3 LPRA sec. 9603 (5).

una revisión judicial; el término disponible para así hacerlo y la fecha del archivo en autos de copia de la notificación de la adjudicación- **Sólo a partir de la notificación así requerida es que comenzará a transcurrir el término para acudir en revisión judicial.** (Énfasis nuestro).

Años más tarde, el Art. 10.006 de la Ley de Municipios Autónomos, *supra*, en conjunto con el Art. 15.002 del mismo estatuto fueron enmendados mediante la aprobación de la Ley Núm. 213-2009.[19] Esta legislación modificó el inciso (a) del Art. 10.006 en lo concerniente a la manera en que una Junta de Subastas notificará la adjudicación de subasta a los licitadores o participantes. Este cambio en la legislación promulga lo siguiente:

Artículo 10.006 Junta de Subasta—Funciones y deberes

La Junta entenderá y adjudicará todas las subastas que se requieran por ley, ordenanza o reglamento y en los contratos de arrendamiento de cualquier propiedad mueble o inmueble y de servicios, tales como servicios de vigilancia, mantenimiento de equipo de refrigeración, y otros.

(a) Criterios de adjudicación.[…]

.    .    .    .    .    .    .    .

Tal adjudicación de una subasta será notificada a todos los licitadores certificando el envío de dicha adjudicación mediante correo certificado con acuse de recibo. En la consideración de las ofertas de los licitadores, la Junta podrá hacer adjudicaciones por renglones cuando el interés público así se beneficie. La Junta notificará a los licitadores no agraciados, las razones por las cuales no se le adjudicó la subasta. **Toda adjudicación tendrá que ser notificada a cada uno de los licitadores apercibiéndolos del término jurisdiccional de**

---

[19] Transporte Rodríguez v. Jta. Subastas, 194 DPR 711, 717 (2016); Pta. Arenas Concrete, Inc. v. J. Subastas, 153 DPR 733, 739 (2001).

**diez (10) días para solicitar revisión judicial de la adjudicación ante el Tribunal de Apelaciones de conformidad con el Artículo 15.002 de esta Ley.** (Énfasis nuestro).[20]

Entretanto, en la modificación del Art. 15.002 de la Ley de Municipios Autónomos, *supra*, se añadió un segundo inciso con el fin de establecer que el Tribunal de Apelaciones será el foro con jurisdicción exclusiva para la revisión judicial de las determinaciones de la Junta de Subastas y el contenido a ser consignado en la notificación de adjudicación. En lo ateniente a las advertencias para la revisión judicial, esta disposición señala lo siguiente:

> Artículo 15.002. Tribunal de Primera Instancia y Tribunal de Apelaciones
>
> (1) El Tribunal de Primera Instancia de Puerto Rico entenderá y resolverá con exclusividad, a instancias de la parte perjudicada, sobre los siguientes asuntos:
>
> .   .   .   .   .   .   .   .
>
> (2) El Tribunal de Apelaciones revisará, con exclusividad, el acuerdo final o adjudicación de la Junta de Subastas, el cual se notificará por escrito y mediante copia por **correo escrito regular y certificado** a la(s) parte(s) afectada(s). **La solicitud de revisión se instará dentro del término jurisdiccional de diez (10) días <u>contados desde el depósito en el correo</u> de la copia de la notificación del acuerdo final o adjudicación. <u>La notificación deberá incluir</u>** el derecho de la(s) parte(s) afectada(s) de acudir ante el Tribunal de Apelaciones para la revisión judicial; término para apelar la decisión; **<u>fecha de archivo en auto de la copia de la notificación y a partir de qué fecha comenzará a transcurrir el término</u>**. La competencia territorial será del circuito regional correspondiente a la región

---

[20] 21 LPRA sec. 4506.

judicial a la que pertenece el municipio.
(Énfasis nuestro).[21]

Por otro lado, la Sec. 13 del Capítulo III del Reglamento 8873, *supra*, es cónsona con las exigencias del Art. 15.002 (2) de la Ley de Municipios Autónomos, *supra*, respecto a la forma adecuada en que la Junta de Subastas de un ayuntamiento tiene que realizar la notificación de adjudicación, la precitada sección dispone:

Sección 13: Aviso de Adjudicación de Subastas

. . . . . . . .

(2) La decisión final de la Junta **se notificará por escrito y por correo certificado con acuse de recibo**, a todos los licitadores que participaron en la subasta y será firmada por el Presidente de la Junta. No se adelantará a licitador alguno, información oficial sobre los resultados de la adjudicación, hasta tanto la Junta le haya impartido su aprobación final.

(3) La notificación de adjudicación o la determinación final de la Junta, que se enviará a todos los licitadores que participaron en la subasta, debe contener la siguiente información:

a) nombre de los licitadores;

b) síntesis de las propuestas sometidas;

c) factores o criterios que se tomaron en cuenta para adjudicar la subasta y razones para no adjudicar a los licitadores perdidosos;

d) **derecho a solicitar revisión judicial de la adjudicación o acuerdo final, ante el Tribunal de Apelaciones, y el <u>término para ello</u>, que es dentro del término jurisdiccional de diez (10) días contados desde el depósito en el correo de la notificación de adjudicación;**

---

[21] 21 LPRA sec. 4702.

e) **fecha de archivo en auto de la copia de la notificación y la fecha a partir de la cual comenzará a transcurrir el término para impugnar la subasta ante el Tribunal de Apelaciones**.

(4) Ante la posibilidad de alguna impugnación de una adjudicación en una subasta, no se formalizará contrato alguno **hasta tanto transcurran diez (10) días contados desde el depósito en el correo de la notificación del acuerdo final o adjudicación**. La anterior prohibición aplicará aún en los casos de subastas en las cuales participó un solo licitador. Transcurrido el término de los diez (10) días de la notificación o adjudicación, el municipio otorgará el contrato escrito, con los requisitos de Ley aplicables y conforme el Capítulo de Contratos Municipales de este Reglamento. (Énfasis nuestro).

Al comparar las enmiendas a la Ley de Municipios Autónomos, *supra*, y el Reglamento 8873, *supra*, con la norma establecida en IM Winner, Inc. v. Mun. de Guayanilla, *supra*, resulta claro que para que la notificación de adjudicación de la Junta de Subastas sea adecuada, ésta tiene que cumplir con varios requisitos de carácter jurisdiccional. Esto es, la notificación de la adjudicación de la Junta de Subastas solo será correcta si: (1) es por escrito; (2) es enviada a los licitadores por correo regular **y** certificado con acuse de recibo; (3) advierte a los participantes el derecho a solicitar la revisión judicial ante el Tribunal de Apelaciones; (4) indica que el término de 10 días para ir en alzada es de carácter jurisdiccional; (5) señala, además, dos fechas fundamentales, a saber: (i) la del archivo en auto de la copia de la notificación de adjudicación; y (ii) **la relacionada al depósito de la notificación en el correo y**

**que a partir de esta última es que se activa el plazo para acudir al Tribunal de Apelaciones.**

Antes de continuar, debemos explicar ¿cuál es la importancia del requisito de la fecha del depósito en el correo? Conforme al Art. 15.002 (2) de la Ley de Municipios Autónomos, *supra* y a la Sec. 13 del Reglamento 8873, *supra*, **esta fecha tiene que constar <u>expresamente</u> en la notificación de adjudicación y, además, es ineludible consignar que a partir de ese instante se activa el plazo jurisdiccional de 10 días para solicitar la revisión judicial al foro apelativo intermedio.** Otro detalle trascendental es que, **hasta tanto no discurra dicho término, el licitador u oferente <u>no podrá formalizar el contrato con el municipio</u>.**

A tono con lo anterior, el derecho a cuestionar una subasta adjudicada mediante revisión judicial es parte del debido proceso de ley y, por la misma razón, resulta indispensable que la notificación sea adecuada a todas las partes cobijadas por tal derecho.[22] Como en las órdenes y sentencias de los tribunales y las determinaciones de las agencias administrativas, la correcta y oportuna notificación de una adjudicación de una Junta de Subastas es un requisito *sine qua non* de un ordenado sistema cuasijudicial y su omisión puede conllevar graves consecuencias.[23] Así, la notificación defectuosa priva de jurisdicción al foro revisor

---

[22] <u>IM Winner, Inc. v. Mun. de Guayanilla</u>, *supra*, pág. 35.

[23] <u>IM Winner, Inc. v. Mun. de Guayanilla</u>, *supra*, pág. 37. Es incuestionable que si este requisito *sine qua non* es parte de un ordenado sistema judicial asimismo lo es para un procedimiento cuasijudicial como la subasta formal o un RFP.

para entender sobre el asunto impugnado. Lo anterior tiene el efecto de que el recurso que se presente ante un tribunal de mayor jerarquía sería prematuro.[24]

No podemos pasar por alto que la falta de jurisdicción sobre la materia es una defensa irrenunciable, que puede ser planteada a petición de parte o el tribunal *motu proprio* y en cualquier etapa de los procedimientos, incluso en fases apelativas.[25] Como la falta de jurisdicción incide sobre el poder mismo para adjudicar la controversia, los tribunales

---

[24] En <u>Yumac Home v. Empresas Masso</u>, 194 DPR 96, 107 (2015) explicamos de manera sencilla nuestra norma reiterada relacionada a la presentación de un recurso tardío *vis a vis* al presentado de forma prematura. Allí expresamos lo siguiente:

> Un recurso que se desestima por presentarse pasado el término provisto para recurrir se conoce como un "recurso tardío". Por su parte, un recurso que se ha presentado con relación a una determinación que está pendiente ante la consideración del tribunal apelado, o sea, que aún no ha sido finalmente resuelta, se conoce como un "recurso prematuro". Sencillamente, el recurso se presentó en la Secretaría antes de tiempo.

> Un recurso prematuro, al igual que uno tardío, priva de jurisdicción al tribunal al cual se recurre. No obstante, existe una importante diferencia en las consecuencias que acarrea cada una de estas desestimaciones. Desestimar un recurso por ser tardío priva fatalmente a la parte de presentarlo nuevamente, ante ese mismo foro, o ante cualquier otro. En cambio, la desestimación de un recurso por prematuro le permite a la parte que recurre volver a presentarlo, una vez el foro apelado resuelve lo que estaba ante su consideración. (Cita omitida).

[25] Véase <u>Shell v. Srio. Hacienda</u>, 187 DPR 109, 122 (2012). En este caso reiteramos nuestra norma pautada sobre las consecuencias fatales que implica la falta de jurisdicción sobre la materia y estas son:

> (1) no es susceptible de ser subsanada; (2) las partes no pueden otorgar voluntariamente al tribunal jurisdicción sobre la materia ni el tribunal puede arrogársela; (3) los dictámenes de un foro sin jurisdicción sobre la materia son nulos (nulidad absoluta); (4) los tribunales tienen el deber ineludible de auscultar su propia jurisdicción; (5) los tribunales apelativos deben examinar la jurisdicción del foro de donde procede el recurso, y (6) un planteamiento de falta de jurisdicción sobre la materia puede hacerse en cualquier etapa del procedimiento por cualesquiera de las partes o por el tribunal motu proprio. Íd.

tienen el deber ministerial de evaluar el planteamiento con rigurosidad.[26]

### III

De una lectura de la minuta de adjudicación enmendada observamos las deficiencias que incidieron en la jurisdicción del Tribunal de Apelaciones. A pesar de que la minuta de adjudicación enmendada cumplió con parte del contenido requerido, ésta: (1) no advirtió que el término de 10 días **es jurisdiccional**, (2) **la Junta no consignó la fecha en que fue depositada en el correo**, (3) **ni señaló que a partir de esa fecha comenzaría a transcurrir el término para acudir al Tribunal de Apelaciones.**[27] En otras palabras, aun cuando la minuta de adjudicación enmendada refleja que el 30 de octubre de 2018 la Junta archivó en los autos la original de la notificación de adjudicación y consta, además, ésta como la fecha de la determinación, **faltó consignar <u>con especificidad</u> que el 2 de noviembre de 2018 se depositó en el correo la minuta de adjudicación enmendada de la Propuesta y que desde esta fecha comenzaría a transcurrir el término jurisdiccional de 10 días para que Eco Park solicitara la revisión judicial ante el Tribunal de Apelaciones.**

Contrario a lo planteado por la Junta y Waste, Eco Park no renunció al argumento de la notificación defectuosa por el hecho de no plantear el señalamiento de error en el recurso de revisión judicial. Asimismo, la admisión de Eco

---

[26] Shell v. Srio. Hacienda, *supra*, pág. 123.
[27] Apéndice de la Petición de *certiorari*, pág. 135.

Park sobre la fecha en que la Junta depositó la minuta de adjudicación enmendada en el correo no subsanó la insuficiencia de la notificación de adjudicación.

En consecuencia, **las deficiencias en el contenido de la notificación de la adjudicación privaron al Tribunal de Apelaciones de jurisdicción, pues el plazo para la revisión judicial no ha comenzado a transcurrir**. Ciertamente, el foro apelativo intermedio carecía de jurisdicción para atender el recurso de revisión judicial de Eco Park, no porque se hubiese presentado de manera tardía sino, todo lo contrario, **por prematura**. No obstante, en el pasado hemos resuelto que habiendo la parte presentado su recurso y ante la ausencia de incuria, el Tribunal de Apelaciones debe resolver en los méritos el mismo.[28]

Eco Park acudió al Tribunal de Apelaciones apenas a los 3 días de vencido el término dispuesto para estos fines. Del expediente no surge evidencia que demuestre que la presentación del recurso a los 3 días de vencido el término haya causado perjuicio a Waste. Por consiguiente, ante la ausencia clara de que haya mediado la doctrina de incuria por parte de Eco Park, corresponde que el foro apelativo intermedio atienda en los méritos la impugnación planteada.

**IV**

---

[28] *Véanse* Horizon v. JTA. Revisora, RA Holdings, 191 DPR 228, 235-236(2014), Molini Gronau v. Corp. PR Dif. Púb., 179 DPR 674, 686-687 (2010), Comisión Ciudadanos v. G.P. Real Property, 173 DPR 998, 1015, 1020-1021 (2008), IM Winner, Inc. v. Mun. de Guayanilla, *supra*, pág.39, Carabarín et al. v. ARPe, 132 DPR 938, 958-959 (1993).

Por los fundamentos antes expuestos, expedimos el auto de *certiorari* solicitado sin trámite ulterior de conformidad con la Regla 50 del Reglamento de este Tribunal, 4 LPRA Ap. XXI-B y, en consecuencia, se revoca la Sentencia del Tribunal de Apelaciones para que atienda el recurso de epígrafe.

Se dictará sentencia de conformidad.


                        Erick V. Kolthoff Caraballo
                             Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Puerto Rico Eco Park, Inc.;
Moca Eco-Park Corp.;
Yauco Eco Park, L.L.C.

     Peticionarios

        v.

                  CC-2019-75     Certiorari

Municipio de Yauco
(Junta de Subastas)

     Recurrido

Waste Enterprises, Corp.

     Parte con interés

SENTENCIA

San Juan, Puerto Rico, a 21 de mayo de 2019.

Por los fundamentos expuestos en la Opinión que antecede la cual se hace formar parte íntegra de la presente, expedimos el auto de *certiorari* solicitado sin trámite ulterior de conformidad con la Regla 50 del Reglamento de este Tribunal, 4 LPRA Ap. XXI-B y, en consecuencia, se revoca la Sentencia del Tribunal de Apelaciones para que atienda el recurso de epígrafe.

Así lo pronunció, manda el Tribunal y certifica el Secretario del Tribunal Supremo. La Jueza Presidenta Oronoz Rodríguez emitió Opinión concurrente a la cual se unió el Juez Asociado señor Colón Pérez. La Juez Asociada señora Rodríguez Rodríguez hizo constar la siguiente expresión:

> Disiento tanto del aspecto sustantivo de la Sentencia que se dicta, como de la utilización, nuevamente, del mecanismo excepcional provisto por la Regla 50 del Reglamento.

La Jueza Asociada señora Pabón Charneco y el Juez Asociado señor Estrella Martínez no intervinieron.


José Ignacio Campos Pérez
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Puerto Rico Eco Park, Inc.;
Moca Eco-Park Corp.; Yauco
Eco Park, L.C.C.

    Peticionarios

        v.

Municipio de Yauco (Junta de
Subastas)

    Recurrido

Waste Enterprises, Corp.

    Parte con interés

CC-2019-75

La Jueza Presidenta Oronoz Rodríguez emitió una Opinión concurrente a la cual se unió el Juez Asociado señor Colón Pérez

En San Juan, Puerto Rico, a 21 de mayo de 2019.

Concurro con la decisión que emite una Mayoría del Tribunal. Aunque estoy de acuerdo en que procede devolver el caso al Tribunal de Apelaciones para que atienda el recurso en los méritos, considero que la controversia no ameritaba una Opinión por parte de este Tribunal. El asunto que atiende la Opinión mayoritaria y el remedio que dispone no son noveles ni aportan algo distinto a nuestro ordenamiento. La devolución del caso al Tribunal de Apelaciones es el resultado de la aplicación de normas y principios establecidos y reiterados en casos anteriores, ante controversias similares. Las enmiendas a la Ley de Municipios Autónomos y el nuevo Reglamento no alteran

lo que, en realidad, es la corrección de un error del foro recurrido para conformarlo al Derecho vigente. De otra parte, concurro porque la Opinión mayoritaria adopta un enfoque jurisdiccional que se aleja de aquel utilizado en los casos anteriores. Veamos.

Surge de la Opinión mayoritaria que no es la primera vez que nos enfrentamos a una controversia similar a esta, en la cual resolvemos que el término aplicable no comenzó a transcurrir y procede aplicar la doctrina de incuria ante una notificación defectuosa. Véase IM Winner, Inc. v. Mun. de Guayanilla, 151 DPR 30 (2000); Molini Gronau v. Corp. P.R. Dif. Púb., 179 DPR 674 (2010), y Horizon v. JTA. Revisora, RA Holdings, 191 DPR 228 (2014).

En particular, en IM Winner, Inc. v. Mun. de Guayanilla, supra, se impugnó, igual que en el caso de referencia, la adjudicación de una subasta municipal. Este Tribunal determinó que el término para revisar la determinación administrativa ante el Tribunal de Apelaciones no comenzó a transcurrir porque la Junta de Subastas emitió una notificación defectuosa. Expuesto lo anterior, expresamos que "[e]n pasadas ocasiones hemos resuelto que si bien una notificación defectuosa impide que decurse el término para acudir en revisión, el término dentro del cual deberá interponerse el correspondiente recurso quedará sujeto a la doctrina de incuria". Íd., pág. 39. En esa ocasión resaltamos que IM Winner actuó con diligencia al impugnar la subasta y demostró un deseo constante de revisar los méritos de la subasta, pues instó

su recurso apenas tres días después de vencido el término. Por tanto, devolvimos el caso al foro apelativo intermedio para que considerara el recurso de revisión en los méritos.

Igual análisis empleamos en Molini Gronau v. Corp. P.R. Dif. Púb., supra, pág. 687, cuando expresamos que: "si una parte no ha sido notificada adecuadamente de su derecho de revisión, a dicha parte no se le pueden oponer los términos para recurrir. No obstante, esa parte estará sujeta a la doctrina de incuria". Reiteramos dicho razonamiento en Horizon v. JTA. Revisora, RA Holdings, supra, págs. 235-236:

> …cuando una agencia administrativa no advierte adecuadamente a las partes acerca del foro al cual deben acudir en revisión judicial, no se puede perjudicar a la parte por haber acudido al foro incorrecto, porque esto sería permitir que la agencia se beneficie de actuaciones administrativas que inducen a error a la parte notificada. Así las cosas, a una parte que no fue notificada adecuadamente de su derecho de revisión, no se le pueden oponer los términos para recurrir. Hemos reconocido en estos casos de notificaciones erróneas relacionados con la revisión de una determinación administrativa, que se le debe conceder tiempo a la parte perjudicada para que ejerza su derecho de revisión judicial como corresponde o atender el recurso de revisión ya presentado, siempre que no haya mediado incuria. La doctrina de incuria se ha definido como "dejadez o negligencia en el reclamo de un derecho, los cuales en conjunto con el transcurso del tiempo y otras circunstancias que causan perjuicio a la parte adversa, opera como un impedimento en una corte de equidad".

En estos casos, el Tribunal consideró que el error de la agencia no debía perjudicar a la parte y que, en ausencia de un término en curso, se debía determinar si

acudió al foro apropiado oportunamente. De igual forma, el análisis se centró en el debido proceso de ley de la parte que recibió la notificación defectuosa y en la aplicación de la doctrina de incuria. En ninguno de los casos citados se aseveró, como en la Opinión mayoritaria, que "la notificación defectuosa priva de jurisdicción al foro revisor para entender sobre el asunto impugnado".[29] Aunque la Opinión mayoritaria concluye correctamente que al amparo de la doctrina de incuria el recurrente acudió oportunamente al Tribunal de Apelaciones, sostiene que la notificación deficiente priva de jurisdicción a dicho foro.[30] Tal expresión es incompatible con los casos citados y la propia norma que reitera la Opinión mayoritaria.

Por todo lo anterior, aunque difiero respecto a ciertas expresiones de la Opinión mayoritaria atinentes a la falta de jurisdicción del foro apelativo, coincido en que el peticionario no incurrió en incuria y, por tanto, procede devolver el caso al Tribunal de Apelaciones para que lo evalúe en los méritos. Este remedio es más práctico, económico y eficiente para las partes. No obstante, reitero que lo anterior no ameritaba una Opinión de este Tribunal.

                                          Maite D. Oronoz Rodríguez
                                          Jueza Presidenta

---

[29] Opinión Mayoritaria, pág. 13.
[30] Íd., págs. 15-16.