Ivonne Molini Gronau, peticionaria, *v.* Corporación de Puerto Rico para la Difusión Pública et al., recurridos.

*Número:* CC-2009-1097          *Resuelto:* 20 de julio de 2010

676

*Michael Corona Muñoz* y *Pedro J. Quiñones Álvarez*, abogados de la parte peticionaria; *Carlos George* y *Dimitri González Izquierdo*, de *O'neill & Borges*, abogados de la parte recurrida.

LA JUEZA ASOCIADA SEÑORA PABÓN CHARNECO emitió la opinión del Tribunal.

Comparece ante nos Ivonne Molini Gronau (la peticionaria) para solicitar la revisión de una Sentencia emitida por el Tribunal de Apelaciones. Mediante dicho dictamen, el foro apelativo intermedio revocó la determinación del Tribunal de Primera Instancia que declaró "con lugar" el remedio interdictal solicitado por la peticionaria.

Veamos los hechos que dieron génesis a la controversia de autos.

## I

Conforme surge del expediente ante nuestra consideración, la peticionaria trabajaba como Gerente de Noticias en la Corporación de Puerto Rico para la Difusión Pública (la Corporación).

El 14 de mayo de 2009, el Presidente de la Corporación, Israel Cruz Santiago, le envió una comunicación titulada "Estado de Emergencia Fiscal" al personal de la Corporación. En dicha misiva, el Presidente le informó al personal que, ante la crisis fiscal por la que atravesaba el Gobierno de Puerto Rico, se le habían reducido sustancialmente los presupuestos a las agencias gubernamentales. En consecuencia, el Presidente de la Corporación destacó que se estaba preparando un plan dirigido a reducir los gastos de la Corporación.

El 17 de julio de 2009, el Presidente de la Corporación emitió una nueva comunicación en la que indicó que la reducción del presupuesto de la Corporación era de $5,252,000, en comparación con el presupuesto del año

anterior. Además, expresó que la Junta de Directores de la Corporación había dado instrucciones para que se adoptara un plan de economías para hacer frente al difícil escenario fiscal. Sobre el particular, el Presidente en su alocución anunció la suspensión o reducción de algunos beneficios laborales como salarios, aumentos, dietas y aportaciones, *inter alia*. Las medidas de austeridad anunciadas incluyeron la reducción de una hora de la jornada laboral diaria.

Sin embargo, el 5 de agosto de 2009, el Presidente de la Corporación notificó que, ante la oposición de los empleados y los reclamos de la Unión General de Trabajadores, había decidido dejar sin efecto la reducción de la jornada laboral. Así las cosas, el 6 de agosto de 2009, el Presidente de la Corporación circuló una misiva en la que informó que ante la crisis fiscal la Corporación evaluaría decretar un Plan de Cesantías Gerenciales.

En lo que nos respecta, el 28 de septiembre de 2009, la peticionaria fue notificada de su cesantía conforme al plan creado por la Corporación. Esa acción se fundamentó en el Reglamento de Personal para los Empleados Gerenciales del Servicio de Carrera de la Corporación de Puerto Rico para la Difusión Pública (el Reglamento). Surge de la comunicación remitida que las cesantías fueron parte de la "decisión de la Corporación de implementar de [sic] un Plan de Cesantías el cual fue avalado por la Junta de Directores de la Corporación el 15 de julio de 2009".[1]

A su vez, en el escrito, se le notificó a la peticionaria que la cesantía sería efectiva transcurridos treinta (30) días contados a partir de su notificación y que tenía disponible un término de quince (15) días para expresar su posición por escrito o para solicitar una vista administrativa informal. Además, se le informó a la peticionaria de su de-

---

[1] Apéndice de la Petición de *certiorari*, pág. 292.

recho de apelar la decisión ante el Comité de Apelaciones de la Corporación en un término de treinta (30) días.

El 22 de octubre de 2009, la peticionaria presentó una Demanda ante el Tribunal de Primera Instancia. En la misma, la peticionaria solicitó un *injunction* preliminar y permanente, sentencia declaratoria y compensación por daños y perjuicios. La peticionaria adujo que el Plan de Cesantía estatuido violaba los postulados del debido proceso de ley, del principio de mérito y de otros derechos según reconocidos por el Reglamento.

En su alegación responsiva, la Corporación arguyó que el foro con jurisdicción para atender la controversia instada era el Comité de Apelaciones de la Corporación y no el tribunal.

Evaluados los argumentos, el Tribunal de Primera Instancia emitió su Sentencia. En su dictamen, el foro de instancia hizo constar como hechos no controvertidos que la Junta de Directores de la Corporación había aprobado el Plan de Cesantías y que esa alternativa fue seleccionada por esa entidad tras evaluar las cinco (5) opciones sometidas por el Presidente de la Corporación. El foro primario determinó que la Junta había sido la autoridad que tomó la decisión impugnada. Por lo tanto, y de acuerdo con el Reglamento, ese foro concluyó que el Comité de Apelaciones de la Corporación no tenía jurisdicción para revisar los reclamos sobre la cesantía efectuada. Ante esto, el Tribunal de Primera Instancia dictaminó que la notificación de la decisión había sido defectuosa al referir a la peticionaria a un foro administrativo que carecía de jurisdicción.

En consecuencia, el foro primario declaró "con lugar" el *injunction* solicitado y dejó sin efecto la cesantía de la peticionaria, por entender que la notificación de la cesantía había sido defectuosa. El Tribunal de Primera Instancia no entró a considerar los méritos de las alegaciones de la peticionaria. Sobre el particular, ese tribunal expresó que

"[e]n lo que respecta a la impugnación del plan de cesantías ... a los efectos de que no cumple con el Reglamento de Personal ... ni con el principio de mérito, resolvemos que es prematuro, habida cuenta que no se ha configurado la cesantía".[2]

Inconforme, la Corporación acudió ante el Tribunal de Apelaciones. Ante dicho foro apelativo intermedio, la Corporación alegó que las cesantías las efectuó el Presidente de la Corporación y no la Junta de Directores de la Corporación. Sin embargo, la Corporación admitió que la Junta de Directores había escogido el Plan de Cesantías implantado entre otras alternativas sugeridas por el Presidente de la Corporación. Al respecto, la Corporación expuso que "[u]na vez evaluados los Planes, la Junta de Directores aprobó el Plan denominado como 'C' el cual consistía de la eliminación de cincuenta y tres (53) puestos entre los cuales habían veintiún (21) puestos gerenciales".[3]

En la alternativa, la Corporación planteó que, de entenderse que el Comité de Apelaciones carecía de jurisdicción por haber sido una decisión de la Junta de Directores, lo que procedía era atender los méritos de la demanda y no la revocación automática de las cesantías.

El 18 de noviembre de 2009, el Tribunal de Apelaciones revocó la Sentencia del foro primario. El foro apelativo intermedio concluyó que el Comité de Apelaciones de la Corporación podía revisar la decisión impugnada por ser una determinación del Presidente y no de la Junta de Directores. Sin embargo, ese foro dispuso "en equidad" que el término de treinta (30) días para acudir ante el Comité de Apelaciones de la Corporación comenzaría a transcurrir a partir de la notificación de su Sentencia.

Insatisfecha, la peticionaria acude ante nos. Junto con su petición de *certiorari* acompañó una Moción en Auxilio

---

[2] Apéndice de la Petición de *certiorari*, pág. 181.

[3] Íd., pág. 160.

de Jurisdicción. En su escrito, la peticionaria adujo que el Tribunal de Apelaciones había incidido al revocar el *injunction* concedido por el foro primario y referir el asunto al Comité de Apelaciones de la Corporación.

El 30 de diciembre de 2009 emitimos una Resolución en la que denegamos la Moción en Auxilio de Jurisdicción y concedimos término a la Corporación para que se expresara en cuanto al recurso de *certiorari*. Contando con la comparecencia de las partes procedemos a resolver.

## II

En el recurso de autos debemos resolver si la cesantía impugnada por la peticionaria es revisable ante el Comité de Apelaciones de la Corporación o ante el Tribunal de Primera Instancia. De determinarse que la cesantía era revisable, en primera instancia, por el foro judicial, compete dictaminar el remedio al que tiene derecho la peticionaria ante el defecto de la notificación.

La Corporación de Puerto Rico para la Difusión Pública es una corporación pública creada por la Ley Núm. 216 de 12 de septiembre de 1996, según enmendada, 27 L.P.R.A. sec. 501 *et seq*. Al aprobarse la Ley Núm. 216, *supra*, esa entidad pública dejó de ser una subsidiaria de la Autoridad de Teléfonos y se creó como una autoridad independiente regida por una Junta de Directores. Íd. El propósito de esa medida legislativa fue que la Corporación contara con la autonomía operacional necesaria para brindar un servicio público eficiente. Art. 2 de la Ley Núm. 216, *supra*, 27 L.P.R.A. sec. 502.

En lo pertinente, la precitada Ley Núm. 216, en su Art. 3, establece que la Junta de Directores de la Corporación ejerce los poderes, las facultades y los deberes de ésta y determina su política operacional y administrativa. Esta

Junta nombra al Presidente de la Corporación y determina sus funciones, responsabilidades y deberes. 27 L.P.R.A. sec. 503.

Entre sus funciones, la Junta de Directores de la Corporación está llamada a "determina[r] la distribución y el uso de su presupuesto" y tiene facultad para crear la reglamentación que estime pertinente para la consecución de sus fines, propósitos y actividades. 27 L.P.R.A. sec. 503. Véase *Guzmán v. Calderón*, 164 D.P.R. 220 (2005). Por su parte, el Presidente tiene a su cargo la administración general de la Corporación. Art. 3 de la Ley Núm. 216, *supra.*

■ El personal de la Corporación está excluido de las disposiciones de la ley de personal. Sin embargo, la Corporación debe ceñirse a las normas que impone el principio de mérito. Art. 3 de la Ley Núm. 216, *supra.*

■ En lo pertinente, la Corporación adoptó el Reglamento Núm. 6859 de 9 de agosto de 2004, conocido como Reglamento de Personal para los Empleados Gerenciales del Servicio de Carrera de la Corporación de Puerto Rico para la Difusión Pública. Posteriormente, este Reglamento fue enmendado por el Reglamento Núm. 7603 de 3 de noviembre de 2008. Esa enmienda aclaró y dispuso sobre las garantías procesales a las que tienen derecho los empleados gerenciales en caso de suspensión o destitución. En particular, la enmienda incorporó el inciso (10) a la Sec. 11 del Reglamento. Este inciso establece un procedimiento de revisión ante el Comité de Apelaciones de la Corporación de algunas determinaciones de la agencia.

■ Por su parte, la Sec. 11.11(5)(c) del Reglamento, dispone, en lo pertinente:

> El Comité tendrá facultad para revocar, confirmar, o enmendar las decisiones tomadas a nivel gerencial del más alto nivel jerárquico, *excepto las decisiones tomadas por la Junta de Directores de la Corporación.* (Énfasis nuestro.)

■ De lo anterior, se puede colegir que existen decisiones gerenciales que el Comité de Apelaciones de la Corporación no puede revisar, ya que las dictaminó su Junta de Directores. Esta disposición limita el poder del Comité al no conferirle jurisdicción para intervenir con las determinaciones del cuerpo superior de la Corporación, a saber, la Junta de Directores de la Corporación. De igual forma, la Sec. 11(6)(c) del Reglamento le confiere jurisdicción al Comité de Apelaciones de la Corporación para revisar las *decisiones del Presidente* "relacionadas con determinaciones administrativas que puedan afectar o incidir en el principio de mérito".

■ El término para apelar una determinación ante el Comité de Apelaciones de la Corporación es de treinta (30) días y es "final e improrrogable, por lo que el Comité carecerá de jurisdicción para entender en cualquier caso en que la apelación se haya interpuesto fuera de dicho término". Sec. 11(7) del Reglamento. Sabido es que la ausencia de jurisdicción elimina la autoridad de un foro para atender una controversia. *González v. Mayagüez Resort & Casino*, 176 D.P.R. 848 (2009); *Vázquez v. A.R.Pe.*, 128 D.P.R. 513 (1991).

■ La Sec. 11.4(1) del Reglamento regula el proceso de cesantías cuando éstas son necesarias "[d]ebido a la eliminación de puestos por falta de trabajo o fondos". Esta sección permite que el Presidente de la Corporación determine el número de puestos a suprimirse o eliminarse. Sin embargo, esto último no limita las facultades que le conceden a la Junta de Directores de la Corporación la Ley Núm. 216, *supra*, y el Reglamento. Este último establece que la "Corporación podrá decretar cesantías", y este tipo de medidas es afín con las facultades de la Junta de ejercer los "poderes, facultades y deberes de la Corporación" para determinar su política administrativa y operacional. Véase Art. 3 de la Ley Núm. 216, *supra*.

■ La Sec. 11.4(1) del Reglamento no delega al Presidente de la Corporación la autoridad exclusiva en la toma de decisiones administrativas de personal. Aunque la Junta de Directores de la Corporación puede delegar varias de sus facultades al Presidente, nada prohíbe que ésta realice determinaciones que involucren asuntos presupuestarios como lo es un plan de cesantías. Como mencionamos, si ese proceder lo decreta la Junta de Directores de la Corporación, no se puede revisar ante el Comité de Apelaciones. Sec. 11.11(5)(c) del Reglamento.

## III

Dentro del marco jurídico antes enunciado, procedamos a resolver las controversias ante nuestra consideración.

*A priori*, debemos resolver si el Comité de Apelaciones de la Corporación tenía jurisdicción para revisar la determinación impugnada. Resolvemos en la negativa.

A. Conforme con el ordenamiento jurídico antes expuesto, no albergamos duda de que la Junta de Directores de la Corporación está facultada por el ordenamiento jurídico para tomar decisiones tan transcendentales para el presupuesto de la Corporación como es determinar y aprobar un Plan de Cesantías.[4] El Plan de Cesantías impugnado es una decisión atribuible a la Junta de Directores y, como tal, irrevisable por el Comité de Apelaciones de la Corporación.

Precisamente, el Plan de Cesantías Gerenciales revela que la Junta de Directores de la Corporación, en el ejercicio de sus poderes, determinó la distribución y el uso de su presupuesto con las cesantías notificadas.[5] De hecho, esta

---

[4] Ciertamente, esta autoridad está limitada por las exigencias del debido proceso de ley, del principio de mérito y del Reglamento de Personal para los Empleados Gerenciales del Servicio de Carrera de la Corporación de Puerto Rico para la Difusión Pública (Reglamento).

[5] Apéndice de la Petición de *certiorari*, págs. 260–266.

misiva expresa que "[e]l Plan de Cesantías aprobado por la Junta de Directores fue basado en el escenario de eliminar cincuenta y tres (53) puestos de la Corporación, *entre los cuales se identificaron veintiún (21) puestos gerenciales*". (Énfasis nuestro.)[6] Uno de los puestos gerenciales expresamente identificado y eliminado por el Plan de Cesantías Gerenciales fue el de la peticionaria. Con su aval, la Junta de Directores de la Corporación acogió esa determinación como suya. En otras palabras, se procedió con ese Plan toda vez que la Junta de Directores de la Corporación así lo determinó. En su oposición a la Petición de *Certiorari*, la Corporación no nos pone en condición de llegar a otra conclusión.

La decisión impugnada y que recibió la peticionaria expresamente concede que el Plan de Cesantías Gerenciales lo aprobó la Junta de Directores de la Corporación. Además, la Corporación no cuestiona los hechos siguientes: (1) que la Junta de Directores aprobó el plan de cesantías implantado, y (2) que la Junta de Directores seleccionó esta medida de entre cinco (5) opciones que tuvo ante su consideración. Ante este escenario fáctico, debemos coincidir con el foro primario en que la decisión es irrevisable ante el ente administrativo por disposición expresa del Reglamento.[7] Lo contrario sería hacer abstracción de lo

---

[6] Íd., pág. 265.

[7] A igual conclusión llegó el Tribunal de Primera Instancia en el Caso Civil Núm. KPE-2009-3277. Con anterioridad a la presentación de la demanda que hoy nos ocupa, dos (2) empleadas de la Corporación de Puerto Rico para la Difusión Pública (Corporación) impugnaron sus respectivas cesantías. El foro primario emitió una orden de *injunction* preliminar en la que determinó que la Corporación había incumplido con el principio de mérito y con su Reglamento al no notificar el plan de cesantías a los empleados. En lo pertinente, ese tribunal determinó que la Junta de Directores de la Corporación tomó la decisión impugnada, por lo que es irrevisable ante el Comité de Apelaciones, ya que "[l]o que se cuestión[ó fue] si el plan de cesantías adoptado por la Junta de Directores cumpl[ió o no] con los requisitos de ley y del reglamento". Orden de *injunction* preliminar emitida por el Tribunal de Primera Instancia el 28 de agosto de 2009 en el Caso Civil Núm. KPE-2009-3277, pág. 4.

La peticionaria sostiene que ese dictamen del Tribunal de Primera Instancia constituye un impedimento colateral por sentencia que veda la relitigación del asunto ante nos. No le asiste la razón. El análisis de ese foro inferior nos resulta persuasivo pero no constituye un impedimento colateral por sentencia. El impedi-

dispuesto de manera meridiana en la Sec. 11.11(5)(c) del Reglamento.

Por lo tanto, según los fundamentos esbozados, concluimos que el *Comité de Apelaciones de la Corporación no tiene jurisdicción para atender esta controversia.*

B.   Por último, debemos determinar el remedio al que tiene derecho la peticionaria.([8]) Conforme el análisis anterior, la decisión que impugnó la peticionaria no era revisable por el Comité de Apelaciones de la Corporación. Sin embargo, la Corporación notificó que el Comité de Apelaciones de la Corporación era el foro con jurisdicción para atender la revisión de la determinación de cesantía.

El Tribunal de Primera Instancia resolvió que ese defecto en la notificación invalidaba la cesantía sin que fuera necesario adjudicar los méritos de la reclamación. Para ese proceder, el foro primario se basó en *Comisión Ciudadanos v. G.P. Real Property*, 173 D.P.R. 998 (2008). Incidió el Tribunal de Primera Instancia al así proceder.

En *Comisión Ciudadanos v. G.P. Real Property*, supra, resolvimos que se incumple con las exigencias del debido proceso de ley cuando no se notifica adecuadamente una determinación administrativa a una parte afectada por ella. En aquella ocasión, expresamos que

> ... en *Carabarín et al. v. A.R.P.E.*, 132 D.P.R. 938, 958–959 (1993), establecimos que aunque la agencia notifique a una parte su determinación, *si dicha notificación no advierte adecuadamente el foro al que se debe acudir en revisión, no se*

---

mento colateral por sentencia es una modalidad de la doctrina de cosa juzgada y, como tal, requiere identidad de partes y una sentencia válida y final. *P.R. Wire Prod. v. C. Crespo & Assoc.*, 175 D.P.R. 139 (2008); *Méndez v. Fundación*, 165 D.P.R. 253 (2005); *Fatach v. Triple S, Inc.*, 147 D.P.R. 882 (1999). La orden de *injunction* preliminar para el Caso Civil Núm. KPE-2009-3277 no constituye una sentencia final ni cumple con el requisito de identidad de partes.

([8]) Una sentencia debe conceder el remedio al que tenga derecho una parte, aun cuando ésta no haya solicitado tal remedio en sus alegaciones. Regla 43.6 de Procedimiento Civil de 1979 (32 L.P.R.A. Ap. III); Regla 42.4 de Procedimiento Civil de 2009 (32 L.P.R.A. Ap. V). Véase, además, R. Hernández Colón, *Derecho Procesal Civil*, 4ta ed., San Juan, LexisNexis, 2007, Sec. 4103, págs. 325–326.

*puede perjudicar a la parte por haber acudido al foro erróneo, ya que esto sería permitir que la agencia se beneficie de actuaciones administrativas que inducen a error a la parte notificada.* (Énfasis en el original.) *Comisión Ciudadanos v. G.P. Real Property*, supra, pág. 7.

Por lo tanto, concluimos, entonces, que si una parte no ha sido notificada adecuadamente de su derecho de revisión, a dicha parte no se le pueden oponer los términos para recurrir. No obstante, esa parte estará sujeta a la doctrina de incuria. La doctrina de incuria se ha definido como "dejadez o negligencia en el reclamo de un derecho, los cuales en conjunto con el transcurso del tiempo y otras circunstancias que causan perjuicio a la parte adversa, opera como un impedimento en una corte de equidad". *Comisión Ciudadanos v. G.P. Real Property*, supra, págs. 1020–1021. Véase *Aponte v. Srio. de Hacienda, E.L.A.*, 125 D.P.R. 610, 618 (1990).

En Puerto Rico hemos utilizado la doctrina de *incuria* en relación con remedios extraordinarios como, por ejemplo, el *injunction, mandamus* y *certiorari. Aponte v. Srio. de Hacienda, E.L.A.*, supra. Específicamente, en *Carabarín et al. v. A.R.P.E.*, 132 D.P.R. 938, 958 (1993), el foro con jurisdicción para revisar la determinación de la agencia era el foro primario. Sin embargo, la agencia informó que la revisión era ante un órgano administrativo. Allí, expresamos lo siguiente:

Ante tales hechos, si bien la actuación de A.R.Pe. no pudo tener el efecto de concederle jurisdicción a un organismo que por ley no la tiene, sí tiene el efecto de detener los términos para solicitar la reconsideración ante la agencia y revisión ante el Tribunal Superior. Íd., pág. 958.

En *Carabarín et al. v. A.R.P.E.*, supra, a diferencia del caso ante nuestra consideración, la parte perjudicada por la decisión administrativa había acudido ante el organismo administrativo, según le fuera informado pero ese foro carecía de jurisdicción. Tras invocar preceptos de orden pú-

blico y justicia, concedimos a la parte perjudicada la oportunidad de solicitar reconsideración y de acudir al tribunal para impugnar la decisión administrativa.

De lo anterior se deduce que el remedio que hemos reconocido en estos casos de notificaciones erróneas relacionados con la revisión de una determinación administrativa consiste en concederle tiempo a la parte perjudicada para que ejerza su derecho de revisión judicial como corresponde o atender el recurso de revisión ya presentado, si no ha mediado incuria.(⁹) *Comisión Ciudadanos v. G.P. Real Property*, supra; *Colón Torres v. A.A.A.*, 143 D.P.R. 119 (1997); *Pérez, Pellot v. J.A.S.A.P.*, 139 D.P.R. 588 (1995); *Carabarín et al. v. A.R.P.E.*, supra; *Rivera v. Depto. de Servicios Sociales*, 132 D.P.R. 240 (1992); *García v. Adm. del Derecho al Trabajo*, 108 D.P.R. 53 (1978).

En este caso, la peticionaria fue notificada de su derecho a cuestionar la determinación de la Corporación y de solicitar una vista informal para cumplir con las exigencias del debido proceso de ley. Sin embargo, la Corporación equivocadamente informó que el foro con jurisdicción para solicitar la revisión era el Comité de Apelaciones de la Corporación. No obstante, la peticionaria acudió oportunamente al Tribunal de Primera Instancia, que era el foro con jurisdicción para adjudicar sus reclamos.(¹⁰) Ante esto, procedía que el foro judicial dilucidara en sus méritos la demanda presentada. Es decir, en el caso de autos, ante la aludida notificación errónea, la parte peticionaria al ejer-

---

(⁹) El debido proceso de ley en su vertiente procesal ofrece el derecho a: (1) una notificación adecuada del proceso; (2) un proceso ante un juez imparcial o una vista previa; (3) la oportunidad de ser oído; (4) el derecho a contrainterrogar testigos y examinar la evidencia presentada en su contra; (5) la posibilidad de comparecer con un abogado; (6) que la decisión se base en el expediente, y (7) una decisión explicada o fundamentada. *Domínguez Castro et al. v. E.L.A. I*, 178 D.P.R. 1 (2010). En el área del empleo público, el empleado tiene derecho a una vista informal previa a su despido. Íd.

(¹⁰) La decisión administrativa fue notificada el 28 de septiembre de 2009 y la peticionaria presentó su demanda judicial el 22 de octubre de 2009.

cer su derecho de revisión ante el foro de instancia utilizó correctamente el remedio disponible para estos casos.

En concordancia con lo anterior, debemos colegir que el defecto en la notificación no podía invalidar *ipso facto* las cesantías impugnadas ni hacer procedente el *injunction* solicitado.([11]) El Tribunal de Primera Instancia debió entrar a considerar los méritos de la reclamación de la peticionaria y, por lo tanto, no podía conceder el remedio del *injunction* sin antes hacer una adjudicación del derecho sustantivo.([12])

## IV

Por los fundamentos que preceden, *se expide el auto de "certiorari" y se revoca la Sentencia emitida por el Tribunal de Apelaciones. Se devuelve el caso al Tribunal de Primera Instancia para que continúe con los procedimientos de forma compatible con lo aquí resuelto.*

*Se dictará sentencia de conformidad.*

El Juez Presidente Señor Hernández Denton y la Juez Asociada Señora Rodríguez Rodríguez concurrieron sin opinión escrita.

---

([11]) El Tribunal de Apelaciones señaló correctamente que "[c]omo el TPI no especifica cuál de los dos remedios solicitados concede, no hace las determinaciones procedentes en derecho cuando se emite un remedio preliminar y tampoco determina la consolidación de los remedios, debemos presumir que el TPI concedió el remedio permanente". Apéndice de la Petición de *certiorari*, pág. 26 esc. 3.

([12]) Sabido es que el remedio extraordinario de *injunction* está disponible cuando una persona carece de un remedio adecuado en ley. D. Rivé Rivera, *Recursos Extraordinarios*, 2da ed., San Juan, Programa de Educación Jurídica Continua de la Universidad Interamericana de Puerto Rico, 1996, pág. 18. "El *injunction* no es nada más que un remedio provisional, o permanente, para hacer efectivo el derecho sustantivo que se esté ejercitando en la demanda." Íd., pág. 45. "El derecho sustantivo de que se trate eventualmente se ventilará en un juicio plenario como en cualquier otra acción." Íd., págs. 45–46. Los factores que se deben tomar en cuenta para conceder el *injunction* permanente son: (1) si el demandante ha prevalecido en un juicio en sus méritos; (2) si el demandante posee algún remedio adecuado en ley; (3) el interés público envuelto, y (4) el balance de equidades. *Aut. Tierras v. Moreno & Ruiz Dev. Corp.*, 174 D.P.R. 409 (2008). Esa adjudicación del derecho sustantivo reclamado no ha ocurrido en el caso de autos.