ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| INSTITUTO DE COMPETITIVIDAD Y SOSTENIBILIDAD ECONÓMICA DE PUERTO RICO, INC.; ERIC SANTIAGO; MERARIS BÁEZ<br><br>Recurrentes<br><br>v.<br><br>AUTORIDAD DE ACUEDUCTOS Y ALCANTARILLADOS DE PUERTO RICO (AAA)<br><br>Recurrida | KLRA202400363 | *Apelación* procedente de la Junta de Gobierno de la AAA<br><br>Caso Núm.: Parte de Resolución que Revisa Estructura Tarifaria AAA<br><br>Sobre:<br><br>Revisión Decisión AAA de Aumentar la tarifa del agua |
|---|---|---|

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Ronda Del Toro y la Jueza Díaz Rivera

**Ronda Del Toro, Juez Ponente**

## SENTENCIA

En San Juan, Puerto Rico, a 31 de julio de 2024.

Este Recurso de *Revisión Administrativa* fue presentado el 9 de julio de 2024 por el Instituto de Competitividad y Sostenibilidad Económica de Puerto Rico, Inc. (ICSE); Eric Santiago y Meraris Báez (en adelante, Recurrentes). En este solicitan que revisemos y revoquemos una decisión, Resolución Núm. 3294, emitida por la Junta de Gobierno de la Autoridad de Acueductos y Alcantarillados (AAA), el 3 de junio de 2022. Los Recurrentes impugnan los aumentos en el agua que sirve la AAA a sus clientes. El primero de éstos entró en vigor el 1 de julio de 2022. En dicha *Resolución* se aprobaron varios aumentos al agua que sirve la AAA, para diferentes años fiscales, conforme se ordenó a la AAA por la Junta de Supervisión Fiscal (Junta) creada en la Ley PROMESA, a través del Plan Fiscal 2021 para la AAA. Por medio de esa *Resolución* del 2022 se aprobó y autorizó a la Presidenta Ejecutiva de la AAA a

proceder con la Implementación de la nueva Estructura Tarifaria para los servicios que presta la AAA con todos sus componentes y cargos para que entre en vigor el 1 de julio de 2022.

Evaluado el recurso ante nuestra consideración y el alegato en oposición, a la luz del derecho aplicable y por los fundamentos que explicamos a continuación, desestimamos el Recurso aquí presentado por falta de jurisdicción.

## I.

Los hechos que originan los aumentos al agua para los años 2022, 2023 y 2024, que sirve la AAA a sus clientes, se retrotraen a situaciones surgidas varios años antes, donde el gobierno de Puerto Rico admitió, luego del año 2013,[1] que no tenía capacidad para seguir pagando sus deudas con los acreedores que le habían comprado bonos para financiar diversas obras. Veamos un resumen de eventos pertinentes.

Ello provocó una revisión profunda de las finanzas del Gobierno de Puerto Rico y entre ellas se evaluaron las finanzas de la AAA. Así ocurrió la aprobación de la ley Federal, PROMESA.

El Congreso Federal, amparándose en la Sección 3, Artículo IV de la Constitución federal (Cláusula para administrar territorios, también conocida como Cláusula de Territorios, que faculta al Congreso a elaborar todas las normas y reglamentos necesarios respecto al territorio u otra propiedad perteneciente a los Estados Unidos), aprobó dicha ley federal, (Public Law 114-187 el 30 de junio de 2016, Puerto Rico Oversight, Management, and Economic Stability Act or PROMESA), conocida como "PROMESA", la cual entró en vigor el mismo 30 de junio

---

[1] Véase, Periódico Primera Hora el 2 de abril de 2013; Reuters y Associated Press, 30 de diciembre de 2025 y CNN Business, 1 de julio de 2016.

de 2016. Entre las entidades cubiertas por PROMESA se encuentra el Gobierno de Puerto Rico y la AAA.[2]

El 30 de septiembre de 2016, la Junta designó a la AAA como una instrumentalidad del territorio sujeta a los requisitos de PROMESA.[3]

En septiembre de 2017, los Huracanes Irma y María azotaron a Puerto Rico y afectaron nuestra infraestructura en general. Ello incluyó que la AAA sufrió severos daños que afectaron aún más sus maltrechas finanzas.

A tenor con las disposiciones de PROMESA, el 27 de mayo de 2021 la Junta certificó el Plan Fiscal 2021 para la AAA.

Como parte del Plan Fiscal 2021, se le ordena a la AAA por la Junta, que realice un estudio abarcador del costo real de los servicios que presta y se evalúe su estructura de tarifas para determinar si la misma es la adecuada para mantener las operaciones.[4]

Para esa tarea determinó la Junta que un consultor externo realizara un estudio que cumpliera con los requisitos de la Ley Uniforme para la Revisión y Modificación de Tarifas, Ley 21 de 31 de mayo de 1985, 27 LPRA sec. 261-261*e* (Ley 21).[5] El plan dispuso como sigue:

> Act 21 provides uniform procedures for public hearings and process for the Authority to review its rates. Act 21 mandates engaging an independent examiner, who will then submit an independent report to the Governing Board. Therefore, the outcome of the rate design study will be subject to the public hearing process in accordance with Act 21 requirements PRASA engaged a third-party expert in utility rate design to perform a comprehensive cost of service study and recommend an optimal rate structure aligned with industry standard cost allocation and rate design principles.[6]

---

[2] Financial Oversight and Management Board. Covered Entities, http://www.juntagobierno.upr.edu/wp/content/uploads/sites/16/2017/03/PROMESA_Covered_Entities_List.pdf.
[3] Ver página 23 del Plan Fiscal para el 2021 de la AAA.
[4] Ver página 38 del Plan Fiscal para el 2021 de la AAA.
[5] Plan Fiscal 2021, Sección 3.2.1.1, pág. 73.
[6] Id.

Se indicó, además, que las recomendaciones que emitiera el tercero designado estarían sujetas al proceso de vista pública que establece la Ley 21.[7] La AAA cumplió con los requisitos del Plan Fiscal.

En cumplimiento con dicho Plan Fiscal del 2021, según Certificado por la Junta, se le requiere a la AAA, entre otras cosas, que corrija los problemas de suplir agua, sin que pueda facturar por la misma, y que sustituya los metros del agua servida que tenía para el comienzo del año 2021, los que estaban obsoletos. Se le requiere, además, que estableciera unos ajustes a sus tarifas de cobrar por el agua servida a sus clientes, de forma que esos aumentos reflejen los aumentos en los costos de producción del agua servida, adquiera metros modernos y que mejoren su forma de servicio a sus clientes.

El 17 de septiembre de 2021, la Junta de Gobierno de la AAA aprobó la *Resolución* 3248 para comenzar un trámite de revisión tarifaria. Luego de aprobada la resolución antes mencionada, el proceso continuó ante un Oficial Examinador designado por la Junta de la AAA, al amparo de la Ley 21, según enmendada y denominada Ley Uniforme para la Revisión y Modificación de Tarifas, (ver 27 LPRA secs. 261-261e y Meléndez Ortiz v. Valdejully, 120 DPR 1 (1987)). Como Oficial Examinador se contrató al Ing. Ferdinand Quiñones Márquez, y este realizó dicha encomienda, la que culminó recopilando la información recibida de todos los que quisieron participar y plasmando la misma en un Informe con sus recomendaciones.

También se realizó dicho estudio conforme a la Ley Orgánica de AAA, Ley 40 de 1 de mayo de 1945, según enmendada, y cumplió con todo lo relacionado a las tarifas de AAA que esta cobra a quienes les suple agua. Dicho proceso se concluye con la preparación del Informe

---

[7] Plan Fiscal 2021 de la AAA, pág. 74.

por el Oficial Examinador que se rindió el 16 de mayo de 2022 y en este se propone a la AAA adoptar nuevas tarifas que entrarían en vigor el 1 de julio de 2022, si así adoptaba dicha recomendación la Junta de Gobierno de AAA.

La AAA, luego de dar cumplimiento al proceso de revisión de tarifas, adoptó el 3 de junio de 2022 la *Resolución* de la Junta de Gobierno Número 3294, que acogió algunas de las recomendaciones del Oficial Examinador y aprobó una nueva estructura de tarifas para la AAA. En esta *Resolución* de la Junta de Gobierno de AAA se resolvió unánimemente aprobar, entre otras cosas, que comenzando el 1 de julio de 2022 se incorporaría un aumento de 2% en el Cargo Base y a los Cargos por Consumo, según definidos en la nueva estructura, siempre y cuando se apruebe en la Asamblea Legislativa el P. de la C. 1387 en o antes del 30 de junio de 2022 y sujeto a la aprobación por la Junta y a que se reciban los $20,000,000 según dispone el Proyecto de Ley antes señalado.

Así, el 12 de julio de 2022, los aquí recurrentes presentaron ante el Tribunal de Primera Instancia (TPI) una *Petición Urgente de Sentencia Declaratoria.* Esa acción surge del proceso que comenzó con la *Resolución* 3248 aprobada el 17 de septiembre de 2021, que adopta la AAA para comenzar un trámite de revisión tarifaria, conforme ordenado por la Junta al amparo de PROMESA.

La AAA presentó una Moción de Desestimación el 26 de septiembre de 2022. Allí se argumentó que la demanda en cuestión no exponía una reclamación que justificase la concesión de un remedio. Adujo, además, que el proceso de tarifas es el que rige este tipo de trámite y al ser una ley especial sobre la materia específica de tarifas, prevalece sobre cualquier otra ley de carácter general o que no atienda el proceso de tarifas.

Los ahora recurrentes, demandantes en el TPI, presentaron oposición a la moción de desestimación el 11 de octubre de 2022. Allí argumentaron que la AAA sugería una interpretación equivocada de la Ley 21 y la interacción con la Ley Núm. 38-2017 (LPAU), reclamando que la LPAU prevalecía. La AAA presentó réplica a la oposición, reiterando que la Ley 21 estaba vigente, aunque fuera anterior a la LPAU y que se hizo y se mantenía aplicando a los procesos tarifarios y reiteró además la falta de legitimación activa de ICSE.

El 10 de marzo de 2023, el TPI dictó la Sentencia desestimando el caso. Contra dicha Sentencia los recurrentes presentaron oportuna reconsideración. La AAA se opuso y el TPI decretó *No Ha Lugar* a la reconsideración, lo que se notificó el 23 de mayo de 2023.

Inconformes los antes demandantes en el caso ante TPI y ahora recurrentes, el 22 de junio de 2023 presentaron una Apelación. En el recurso, plantearon que el foro primario incidió al declararse sin jurisdicción y al no devolver el caso a la AAA para que revisara el proceso tarifario de acuerdo con el procedimiento de reglamentación o el adjudicativo que provee la LPAU. En general, reclamaron la derogación tácita de la Ley 21-1985.

El 21 de julio de 2023, la AAA presentó su posición al recurso. Evaluado el asunto, mediante Sentencia de 18 de agosto de 2023 se confirmó la Sentencia del TPI.

En desacuerdo, el 13 de septiembre de 2023, los allí apelantes, acudieron al Tribunal Supremo mediante recurso asignado al CC-2023-0603. En suma, plantearon que este tribunal incidió al no decretar que la Ley 21 fue derogada tácitamente por la LPAU, por lo que el proceso de adopción de tarifas debe regirse por la referida disposición legal.[8] El

---

[8] Apéndice págs. 548-854.

7 de noviembre de 2023, al Tribunal Supremo declaró *No Ha Lugar* la solicitud de certiorari.[9] Los apelantes solicitaron reconsideración, la que también fue denegada el 19 de enero de 2024.[10] El 26 de enero de 2024, el Secretario del Tribunal Supremo emitió la *Carta de Trámite sobre Mandato*.

Finalizado ese procedimiento apelativo y luego de transcurrir más de cinco (5) meses de este, el 9 de julio de 2024 los mismos demandantes en el caso KLAN202300541 presentan este recurso. En el mismo nos solicitan que revisemos y revoquemos una *Resolución* dictada por la Junta de Gobierno de la AAA, el 3 de junio de 2022 y estos impugnan los aumentos en el agua que sirve la AAA a sus clientes, que comenzaron en vigor el 1 de julio de 2022 y años fiscales subsiguientes.

En este recurso, que reclaman Revisión Administrativa de una decisión de la AAA emitida hace más de cuarenta y ocho (48) meses, que siguió la orden de la Junta que se creó Promesa, los recurrentes plantean los siguientes errores:

> PRIMER ERROR: Erró la Autoridad de Acueductos y Alcantarillados al actuar como si la Ley de Procedimiento Administrativo Uniforme no rige el proceso de revisión tarifaria ante dicha corporación pública.

> SEGUNDO ERROR: Erró la Autoridad de Acueductos y Alcantarillados, en la alternativa, al no atemperar el proceso dispuesto en la Ley 21 a las exigencias procesales mínimas exigidas por la LPAU y tampoco cumplir con la Ley 21.

Habiendo comparecido todas las partes, la Revisión está perfeccionada para su adjudicación final, lo que aquí hacemos.

## II.

## A.

Es doctrina firmemente establecida en nuestro ordenamiento jurídico que "los derechos y obligaciones adjudicados en el ámbito judicial, mediante dictamen firme, constituyen la ley del caso." <u>MGMT.</u>

---

[9] Apéndice págs. 855-856.
[10] Apéndice pág. 865.

Adm. Servs. Corp. v. E.L.A., 152 DPR 599, 606 (2000) citando a In re: Tormos Blandino, 135 DPR 573 (1994). Esta doctrina, más que constituir un mandato inflexible, recoge la costumbre deseable de respetar como finales aquellas controversias sometidas, litigadas y decididas por un tribunal dentro de un caso. Sociedad Legal de Gananciales v. Pauneto, 130 DPR 749, 754 (1992). Cuando se adjudican en un pleito derechos y obligaciones mediante un dictamen firme, este constituye la ley del caso. Por tanto, dichos asuntos no se pueden reexaminar, luego del periodo provisto para la reconsideración y para la revisión, a menos que las determinaciones previas sean erróneas o puedan causar una grave injusticia. In re Fernández Díaz, 172 DPR 38, 43-44 (2007).

La doctrina de la ley del caso establece, como norma general, que un tribunal debe seguir sus decisiones previas en los casos. Pueblo v. Ríos Nieves, 209 DPR 264, 278 (2022); Pueblo v. Serrano Chang, 201 DPR 643, 653 (2018). Las decisiones judiciales, que constituyen la ley del caso, incluyen todas aquellas cuestiones consideradas y decididas por el tribunal. Pueblo v. Ríos Nieves, *supra*; Cacho Pérez v. Hatton Gotay y otros, 195 DPR 1, 9 (2016). No obstante, si el caso vuelve ante la consideración del tribunal y este entiende que su determinación anterior es errónea y puede causar una grave injusticia, el tribunal puede aplicar una norma distinta y rectificar su postura previa. Pueblo v. Ríos Nieves, *supra;* Pueblo v. Serrano Chang, *supra*, pág. 653.

**B.**

La *revisión judicial* constituye el remedio exclusivo para auscultar los méritos de una decisión administrativa. La LPAU, conocida como la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto

Rico, 3 LPRA sec. 9601 *et seq.*,[11] según enmendada, dispone en la Sección 4.2, 3 LPRA sec. 9672, como sigue:

> Una parte afectada **por una orden o resolución final de una agencia y que haya agotado todos los remedios provistos por la agencia o por el organismo administrativo apelativo correspondiente**, podrá presentar una solicitud de revisión ante el Tribunal de Apelaciones, dentro de un término de treinta (30) días contados a partir de la fecha del archivo en autos de la copia de la notificación de la orden o resolución final de la agencia o a partir de la fecha aplicable a las dispuestas en la Sección 3.15 de esta Ley cuando el término para solicitar la revisión judicial haya sido interrumpido mediante la presentación oportuna de una moción de reconsideración. […]. (Énfasis nuestro).

A su vez, el Artículo 4.006 de la Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003, Ley 201 de 22 de agosto de 2003, 4 LPRA sec. 24y en parte de su sección c, dispone que:

> El Tribunal de Apelaciones conocerá de los siguientes asuntos… c. Mediante el recurso de revisión judicial, que se acogerá como cuestión de derecho, de las decisiones, órdenes y resoluciones finales de organismos o agencias administrativas. […].

El Tribunal Supremo de Puerto Rico estableció que una "orden o resolución final es aquella emitida por la última autoridad decisoria o adjudicativa de la agencia administrativa." Bird Construction Corp. v. Autoridad de Energía Eléctrica, 152 DPR 928, 936 (2000). Para que una orden o resolución sea final tiene que resolver todas las controversias y no puede dejar pendiente una para ser decidida en el futuro." J. Exam. Tec. Med. V. Elías et al, 144 DPR 483, 490 (1997). Por tanto, los requisitos para que una orden emitida por una agencia pueda ser revisada por este tribunal son: (1) que la parte adversamente afectada por la orden haya agotado los remedios provistos por la agencia, y (2) que la resolución sea final y no interlocutoria. Procuradora Paciente v. MCS, 163 DPR 21 (2004).

---

[11] Su vigencia comenzó el 1 de junio de 2017. Véase, Sección 8.6 de la Ley Núm. 38-2017.

El objetivo principal de la revisión judicial se enfoca en asegurar que las agencias administrativas actúen conforme a las facultades concedidas por ley. Hernández Feliciano v. Municipio de Quebradillas, 211 DPR ___, 2023 TSPR 6, res. 25 de enero de 2023; OEG v. Martínez Giraud, 210 DPR 79 (2022); Pérez López v. Depto. Corrección, 208 DPR 656 (2022). Es norma reiterada que los tribunales están llamados a concederles amplia deferencia a determinaciones de las agencias administrativas. Moreno Lorenzo y otros v. Depto. Fam., 207 DPR 833 (2021); Graciani Rodríguez v. Garage Isla Verde, LLC, 202 DPR 117, 126 (2019).

**C.**

La jurisdicción es el poder o autoridad de un tribunal para considerar y decidir casos y controversias con efecto vinculante para las partes. MCS Advantage, Inc. v. Fossas Blanco, et al., 211 DPR 135 (2023); Adm. Terrenos v. Ponce Bayland, 207 DPR 586, 600 (2021); Allied Mgmt. Group v. Oriental Bank, 204 DPR 374, 385-386 (2020); Beltrán Cintrón et al. v. ELA et al., 204 DPR 89, 101 (2020).

Se ha expresado que los tribunales debemos ser celosos guardianes de nuestra jurisdicción, por lo cual los asuntos relacionados con ésta son privilegiados y deben atenderse con prioridad. Torres Alvarado v. Madera Atiles, 202 DPR 495 (2019). Por consiguiente, el primer factor a considerar en toda situación jurídica que se presente ante un foro adjudicativo es el aspecto jurisdiccional. Torres Alvarado v. Madera Atiles, *supra*; Ruiz Camilo v. Trafon Group, Inc., 200 DPR 254 (2018); Horizon v. Jta. Revisora, RA Holdings, 191 DPR 228, 233–234 (2014). Al cuestionarse la jurisdicción de un tribunal por alguna de las partes o, incluso, cuando no haya sido planteado por éstas, dicho foro examinará y evaluará con rigurosidad el asunto jurisdiccional como parte de su deber ministerial, pues éste incide directamente sobre el

poder mismo para adjudicar una controversia. Torres Alvarado v. Madera Atiles, *supra*; Ruiz Camilo v. Trafon Group, Inc., *supra*; Constructora Estelar v. Aut. Edif. Púb., 183 DPR 1, 22 (2011); Souffront v. A.A.A., 164 DPR 663, 674 (2005). De ese modo, si el tribunal no tiene jurisdicción, solo resta declararlo así y desestimar la reclamación sin entrar en los méritos de la controversia. Torres Alvarado v. Madera Atiles, *supra*; Ruiz Camilo v. Trafon Group, Inc., *supra*; Mun. de San Sebastián v. QMC Telecom, 190 DPR 652, 660 (2014).

### D.

La notificación correcta de un dictamen final es un requisito del debido proceso de ley. Plan Salud Unión v. Seaboard Sur. Co., 182 DPR 714 (2011). Así pues, se incumple con las exigencias del debido proceso de ley cuando no se notifica adecuadamente una determinación administrativa a una parte afectada por ella. Molini Gronau v. Corp. P.R. Dif. Púb., 179 DPR 674, 686 (2010); Comisión Ciudadanos v. G.P. Real Property, 173 DPR 998 (2008). Aunque la agencia le comunique a una parte su determinación, si dicha notificación no advierte adecuadamente el foro al que se debe acudir en revisión, no se puede perjudicar a la parte por haber acudido al foro erróneo, ya que esto sería permitir que la agencia se beneficie de actuaciones administrativas que inducen a error a la parte notificada. Horizon v. Jta. Revisora, RA Holdings, 191 DPR 228, 235 (2014); Molini Gronau v. Corp. P.R. Dif. Púb., *supra*, págs. 686-687, citando a Carabarín et al. v. A.R.P.E., 132 DPR 938, (1993).

Por lo tanto, si una parte no ha sido notificada adecuadamente de su derecho de revisión, a dicha parte no se le pueden oponer los términos para recurrir. No obstante, esa parte estará sujeta a la doctrina de incuria. Molini Gronau v. Corp. P.R. Dif. Púb., *supra.* En estos casos de notificaciones erróneas relacionados con la revisión de una determinación administrativa, se le debe conceder tiempo a la parte

perjudicada para que ejerza su derecho de revisión judicial como corresponde o atender el recurso de revisión ya presentado, siempre que no haya mediado incuria. Horizon v. Jta. Revisora, RA Holdings, 191 DPR 228 (2014).

La doctrina de incuria se define como la dejadez o negligencia en el reclamo de un derecho que con el transcurso del tiempo funge como un impedimento en una corte de equidad. IM Winner, Inc. v. Mun. de Guayanilla, 151 DPR 30 (2000). Para decretar la desestimación de un recurso, se deben evaluar la justificación, si alguna, de la demora y el perjuicio que esta pueda tener. IM Winner, Inc. v. Mun. de Guayanilla, supra, citando a Pérez, Pellot v. J.A.S.A.P., 139 DPR 588 (1995).

**E.**

La Ley Uniforme para la Revisión y Modificación de Tarifas, Ley 21, tiene el propósito de garantizar a los abonados y usuarios de servicios públicos unos procedimientos administrativos adecuados y uniformes para la revisión y modificación de las tarifas que por servicios básicos y esenciales prestados fijan y cobran las corporaciones públicas y demás instrumentalidades públicas, que no tengan otro proceso que les indique como revisar y fijar sus tarifas, entre ellas, la AAA.

La Ley 21 no ha sido derogada por la LPAU ni por ninguna otra ley y, por lo tanto, está vigente y aplica cada vez que una de las entidades de las que dicha ley le rige el aspecto tarifario se propone modificar estas.

El Artículo 3 de la Ley 21 establece el procedimiento para que toda autoridad, corporación pública u otra instrumentalidad, pueda hacer cambios en las tarifas. Ese artículo establece como sigue:

> Toda autoridad, corporación pública u otra instrumentalidad gubernamental análoga que provea servicios públicos básicos y esenciales a la ciudadanía no hará cambios en las tarifas que cobra a sus abonados o

usuarios por dichos servicios, a no ser que cumpla con los siguientes procedimientos:

(a). No se harán cambios de tarifas, con carácter permanente, a menos que se celebren vistas públicas debidamente anunciadas en dos (2) periódicos de circulación general en Puerto Rico, con por lo menos quince (15) días de antelación a la fecha de celebración de las mismas, indicando en el anuncio el sitio, fecha y hora en que se llevará a cabo tal vista pública, las tarifas en vigor, las tarifas propuestas o cambios en las tarifas que se propone adoptar y la fecha de efectividad del propuesto cambio.

(b). La Autoridad pondrá a disposición del público con suficiente antelación a la fecha de celebración de las vistas públicas, los informes o documentos de la agencia apoyando o justificando el propuesto cambio tarifario.

(c). Las vistas públicas ordenadas por esta sección serán presididas por un oficial examinador de reputado conocimiento en la estructura tarifaria de la agencia, designado por la Autoridad para tal efecto. En caso de resultar necesario transferir personal de la agencia para encomendarle la función de servir como oficial examinador durante estas vistas públicas, la persona designada no podrá haber intervenido anteriormente en la determinación del propuesto cambio tarifario.

(d). El oficial examinador escuchará los argumentos de los deponentes y les concederá la oportunidad de presentar testimonio pericial y documental. Dicho funcionario emitirá un informe, que someterá a la Junta de Directores de la Autoridad dentro de los sesenta (60) días siguientes a la fecha en que concluyan las vistas públicas, el cual deberá contener una relación de todas las objeciones, planteamientos, opiniones, documentos, estudios, recomendaciones y cualesquiera otros datos pertinentes presentados en las vistas, así como conclusiones y recomendaciones. Copia de dicho informe se pondrá a disposición del público para examen y estudio, debiéndose notificar tal hecho a través de los medios de difusión pública. Cualquier persona interesada podrá presentar por escrito a la Junta de Directores de la Autoridad concernida sus comentarios al informe, dentro de los diez (10) días siguientes a la fecha en que el mismo haya estado a disposición del público.

27 LPRA sec. 261b.

Esta Ley fue interpretada por el Tribunal Supremo de Puerto Rico en Meléndez Ortiz v. Valdejully, 120 DPR 1 (1987) en el cual se cita la totalidad de la ley, incluyendo su exposición de motivos, que en su último párrafo dispone y citamos:

"Conscientes de la importancia fundamental que tiene la facultad de revisión de las estructuras tarifarias para la operación eficaz y saludable de estas corporaciones públicas concernidas, para los intereses de los inversionistas, para el público consumidor y para nuestra economía, mediante esta ley se establece un procedimiento justo y uniforme para precisar y asegurar el mejor ejercicio de esta potestad."

Ese lenguaje explica la realidad necesaria que es mantener unas tarifas que permitan a la instrumentalidad pública operar diariamente sin estar sujeta a crisis fiscales, que conocemos han existido en varias áreas del gobierno de Puerto Rico. Ello además requiere concluir que no se le deben aplicar todas las disposiciones para la preparación de reglamentos y obtención de permisos frente al proceso de preparar tarifas y por ello la Ley 21, *supra*, está vigente.

En cuanto a la revisión, el Artículo 5 de la Ley 21-1985, 27 LPRA sec. 261d indica como sigue:

Toda determinación final de las entidades públicas sujetas a la aplicación de esta Ley, luego de celebrarse las vistas públicas a que se refieren los Artículos 3 y 4 anteriores, respecto a cambios en tarifas podrá ser revisada por la Asamblea Legislativa mediante resolución concurrente o mediante resolución de cualquiera de sus Cuerpos. Nada de lo aquí dispuesto se entenderá limitativo de la facultad de los tribunales para revisar la decisión administrativa en los casos apropiados.

**F.**

El 30 de junio de 2016, entró en vigor la ley denominada PROMESA, *supra*. En lo pertinente, dicha legislación provee al Gobierno del Territorio la posibilidad de restructurar sus deudas mediante acceso a procesos judiciales de quiebra. PROMESA, sec. 301, 48 USC sec. 2161. El pasado 3 de mayo de 2017, ante el Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico, amparándose en las disposiciones del Título III, de la Ley PROMESA, *supra,* se presentó el caso que colocó a Puerto Rico y varias de sus corporaciones públicas bajo la protección de PROMESA, *supra*.

La Ley PROMESA, es considerada de naturaleza "sui generis." *In re Fin.* Oversight & Mgmt. Bd. for Puerto Rico, 32 F.4th 67, 78 (2022); Peaje Invs. LLC v. García-Padilla, 845 F.3d 505, 513 (1st Cir. 2017).

El Título I de la Ley PROMESA provee el establecimiento de una Junta de Supervisión y Administración Financiera, (Financial Oversight and Management Board), con el propósito de proveer un método para que un territorio cubierto pueda lograr la responsabilidad fiscal y acceder a los mercados de capital. Véase Sección 101 (a) de PROMESA, 48 USC sec. 2121.

Una de las responsabilidades que PROMESA le delegó a la Junta fue desarrollar planes fiscales para el Gobierno de Puerto Rico y sus instrumentalidades, con el propósito de proveer un método de responsabilidad fiscal y acceso al mercado de capital. *In re Fin.* Oversight & Mgmt. Bd. for Puerto Rico, 32 F.4th 67, 74 (1st Cir. 2022).

## III.

A todo proceso de recopilar información para evaluar tarifas de servicios públicos esenciales no le aplica la legislación que rige los procesos para adoptar reglamentos o expedir permisos. Cuando se adoptó la LPAU, nada se indicó sobre el proceso de evaluación de tarifas vigentes. Por ello, la Ley 21, *supra*, está vigente y es la que reglamenta dicho proceso de evaluación de tarifas en AAA y en aquellas otras agencias que esta ley le aplique, conforme lo resolvimos en nuestra decisión en el caso KLAN202300541. Allí validamos el proceso que siguió la Junta al Ordenar a la AAA modificar sus tarifas de forma que estas se ajustaran a la realidad de los costos de su operación, cumpliendo con la Ley 21. Ese siempre ha sido el estado de derecho vigente. Por eso la Junta le indicó a la AAA, a través del Plan Fiscal para dicha

instrumentalidad, que la Revisión de Tarifas se hiciera conforme a la Ley 21, *supra*.

Aquí se recurrió reclamando al Tribunal que se impugnaba un trámite de Revisión de tarifas Ordinario en la AAA y ello no es la realidad en este caso. La Revisión que aquí atendemos pretende reconsideremos nuestra anterior decisión en el caso KLAN202300541, que decretó y citamos: "La pretensión de la parte apelante de que en la alternativa se considere el recurso como un trámite administrativo contra la tarifa implica ignorar el estado de derecho vigente para impugnar cualquier proceso administrativo, que sería el adecuado seguir cuando después de cumplir con los requisitos de la ley 21, la agencia adopte una recomendación de aumento de tarifas."

La aprobación de aumento de tarifas por la AAA ocurrió mediante una Resolución de su Junta de Gobierno del 3 de junio de 2022. Más de cuarenta y ocho (48) meses después presentan este Recurso de Revisión Administrativa. Ello priva de jurisdicción a este Tribunal.

Los Recurrentes pretenden se ignore todo el procedimiento de la quiebra del territorio y sus instrumentalidades públicas. Primero al utilizar la sentencia declaratoria como mecanismo que elimine la validez de la Ley 21 y segundo intentar evadir el correcto cauce administrativo al que podría estar sujeta cualquier revisión de tarifas que se lleve a cabo mediante esa ley, creada para facultar aquellas agencias que operan a través de cobrar tarifas por sus servicios y de esa forma evaluar y atemperar las mismas a la realidad, como correctamente surge de la propia Ley 21.

La pretensión ahora de los Recurrentes, de que se considere este recurso como un trámite administrativo contra la tarifa implica, también, ignorar el estado de derecho vigente que es obligatorio seguir al ser la ley del caso. Además, después de cumplir con los requisitos de la Ley

21, la agencia puede adoptar una recomendación de aumento de tarifas. A este trámite de revisión de tarifas, como resolvimos en el caso KLAN202300541, no le aplica la denominada LPAU y que se rige por lo indicado en la Ley 21, *supra*. Ese es el estado de derecho vigente.

La demanda ante el TPI, que se presentó el 12 de julio de 2022, pretendía anular el Informe rendido por el Oficial Examinador designado por dicha instrumentalidad para evaluar las tarifas de esa agencia y que tiene fecha de 16 de mayo de 2022. Igual fecha tiene la carta que se acompañó al informe y está dirigida al Presidente de la Junta de Gobierno de la AAA.

Examinados con detenimiento los trámites cubiertos por la LPAU, *supra*, que es la ley que quieren los Recurrentes que rija este proceso de evaluación de tarifas, determinamos que en ese análisis ignoran que ya es la ley del caso que este proceso se rige por la Ley 21. Como antes dijimos, no vemos que surja en dicha LPAU medidas que tomaban en cuenta este proceso de evaluación de tarifas de la AAA, que es el que aquí se pretende cambiar.

Los errores que reclaman los Recurrentes contra el proceso administrativo que aquí impugnan no se cometieron. La realidad es que se trata de una Revisión de Tarifas ordenada por el Plan Fiscal que rige la AAA, contra la que primero se presenta una impugnación en el TPI, totalmente improcedente y luego se presenta esta Revisión Administrativa que aquí atendemos, ignorando todo el estado de derecho vigente. Ese trámite errado en esta ocasión excluye de jurisdicción a los Tribunales del territorio de Puerto Rico.

Por ello decretamos que carecemos de jurisdicción para dilucidar este asunto.

## IV.

Por los fundamentos antes expuestos, los que se hacen formar parte de esta Sentencia, se desestima este Recurso por carecer de jurisdicción este Tribunal.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones