ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| AUTORIDAD DE ENERGÍA ELÉCTRICA<br><br>Recurrente<br><br>v.<br><br>NEGOCIADO DE ENERGÍA DE PUERTO RICO<br><br>Recurrido | KLRA202400591 | *Revisión Administrativa*<br>Procedente del Negociado de Energía de PR de la Junta Reglamentadora del Servicio Público<br><br>Caso Núm. NEPR-MI-2024-0005<br><br>Sobre:<br>Apertura de Docket- Imposición de Multa Administrativa |

Panel integrado por su presidente el Juez Bermúdez Torres, el Juez Cruz Hiraldo y el Juez Hernández Sánchez[1]

**SENTENCIA**

En San Juan, Puerto Rico, a 10 de diciembre de 2024.

I.

El 13 de junio de 2024, el Negociado de Energía de Puerto Rico (Negociado), emitió *Resolución y Orden* en la que dispuso la apertura del caso NEPR-Ml-2024-0005, por razón de los eventos ocurridos el 12 de junio de 2024 en que se produjo la interrupción del servicio a cientos de miles de clientes en toda la Isla.[2] Mediante la aludida *Resolución y Orden* el Negociado ordenó a LUMA Energy, LLC y LUMA Energy ServCo, LLC (LUMA), a Genera PR, LLC (Genera) y a la Autoridad de Energía Eléctrica (AEE), respectivamente, a desarrollar planes prioritarios preliminares (PPP), para atender las continuas interrupciones del servicio en el último año. Les ordenó que presentaran los PPP dentro de un término de veinte (20) días,

---

[1] Ante la inhibición de la Juez Martínez Cordero, se designa al Juez Hernández Sánchez en su sustitución. OATA-2024-108.
[2] El primer evento ocurrió en la Central San Juan, provocando que las unidades 5 y 6 de esta Central, y la unidad 1 de la Central Aguirre, salieran de servicio. El segundo evento tuvo lugar en la línea de entre las subestaciones Hacienda San José en Caguas y Aguas Buenas. Entre ambas averías interrumpieron el servicio a más de 530,000 clientes de la Autoridad.

contados a partir de la notificación de la *Resolución*.[3] Dicho término vencía el 3 de julio de 2024. Además, el Negociado le informó a las aludidas compañías que llevaría a cabo dos investigaciones mediante procedimientos independientes. Una, relacionada con las fallas asociadas al transformador averiado que provocó los apagones en el área sur y, la otra, sobre las fallas en dos líneas de transmisión que ocasionaron una interrupción del servicio eléctrico el 12 de junio de 2024.

Tras denegar sendas solicitudes de prórrogas de las tres compañías[4] y por estas no cumplir con lo ordenado en el término concedido, el 5 de julio de 2024, esto es, dos días de vencido dicho término, el Negociado emitió *Resolución y Orden* dándole a LUMA, a Genera y a la AEE hasta el 10 de julio de 2024 para que mostraran causa por la cual no se les debía imponer una multa de $25,000.00, por cada día de retraso en la presentación del PPP, según exigido mediante la *Resolución* emitida el 13 de junio de 2024.

La AEE compareció el 10 de julio de 2024 y argumentó que la responsabilidad de operar y dar mantenimiento al sistema eléctrico recaía exclusivamente sobre LUMA y Genera, por lo que se consideraba exenta de tener que someter el PPP requerido. El 11 de julio de 2024 el Negociado denegó la *Moción* la AEE. Adujo que la obligación de presentar los PPP recaía sobre las tres compañías que operaban el sistema eléctrico. Explicó, que, el PPP que le correspondía presentar a la AEE, naturalmente debía

---

[3] En específico, el Negociado les requirió: (1) un análisis exhaustivo del sistema eléctrico "as is" para identificar los puntos débiles y cualquier otro factor que contribuya a su inestabilidad; (2) necesidad de actualizar esquemas de protección, necesidad de líneas y equipos redundantes, manejo de vegetación, falta de generación confiable, necesidad de control de frecuencia e inercia y los persistentes relevos de carga; (3) estimado detallando los costos necesarios para reparar y realizar las mejoras, así como proveniencia de las fondos; (4) cronología detallada con metas específicas y cuantificables para la ejecución de las reparaciones, el cual no podía excederse de los dos (2) años.
[4] El Negociado justificó su denegatoria a la situación crítica que atravesaban los consumidores que requerían una acción inmediata y, a que ninguna de las compañías sancionadas informó oportunamente tener dificultades con cumplir con la orden en el término concedido.

circunscribirse a su área de operación, es decir, las plantas hidroeléctricas. Siendo el único operador que incumplió totalmente con la *Resolución* de 13 de junio, el Negociado determinó que la AEE continuaba sujeta a la imposición de una multa de hasta veinticinco mil dólares ($25,000.00) diarios por no haber presentado su PPP en o antes del 3 de julio de 2024. Finalmente, el 19 de julio de 2024, la AEE presentó su PPP.[5]

Así las cosas, el 9 de agosto de 2024, el Negociado estableció el calendario procesal para la evaluación de los PPP presentados por las tres compañías. Sin embargo, considerando que las tres compañías incumplieron con presentar sus PPP en el plazo establecido, mediante *Resolución y Orden* de 23 de agosto de 2024, el Negociado les impuso multas administrativas de quinientos dólares ($500.00) diarios y ordenó a satisfacer dichas cantidades dentro de un término de veinte (20) días.

La AEE fue la única compañía que no satisfizo la multa[6] y, en su lugar, el 27 de agosto de 2024, pidió al Negociado que reconsiderara la misma. El 11 de octubre de 2024, el Negociado denegó la reconsideración y ordenó a la AEE a pagar la multa que le fue impuesta dentro de un término de cinco (5) días y a mostrar causa por la cual no se le deba imponer una multa diaria de cinco mil dólares ($5,000.00) por cada día transcurrido sin satisfacer la misma.

Insatisfecha, el 21 de octubre de 2024, la AEE acudió ante nos mediante *Revisión Judicial Sobre Resolución Administrativa.* Acompañó su recurso con una solicitud en *Auxilio de Jurisdicción* para que se suspendiera la ejecución de las *Resoluciones* de 23 de agosto y 11 de octubre de 2024. Plantea:

---

[5] Genera y LUMA presentaron su PPP de estabilización del sistema eléctrico, el 8 y 10 de julio de 2024, respectivamente.

[6] El 11 y 12 de septiembre de 2024, respectivamente, Genera y LUMA informaron al Negociado haber cumplido con la Orden del 23 de agosto mediante el pago de las multas impuestas.

1.    Erró el Negociado de Energía al no incluir las advertencias establecidas requeridas tanto por las Constituciones Federal y Estatal, por la LPAU y la jurisprudencia interpretativa del Tribunal Supremo de Puerto Rico, en la Resolución del 23 de agosto, haciendo que la notificación de la Resolución y Orden sea inoficiosa y en clara violación al debido proceso de ley.

2.    Erró el Negociado de Energía al imponer una multa arbitraria de $8,000.00 a la AEE, por el alegado incumplimiento de la Resolución del 13 de junio, cuando dicha Resolución y Orden no requirió un plan de investigación del sistema hidroeléctrico del País, por no estar relacionado con los eventos del 12 de junio de 2024.

3.    Erró el Negociado de Energía al denegar la solicitud de reconsideración presentada por la AEE y ordenarle mostrar causa por la cual no deba imponerle una nueva multa de $5,000.00 por cada día que transcurra hasta que se satisfaga la multa de $8,000.00.

El 22 de octubre paralizamos los procedimientos en el Foro *a quo* y dimos plazo de veinte (20) días al Negociado para que mostrara causa por la cual no debíamos devolverle el caso para que subsanara la notificación deficiente.[7] El 12 de noviembre compareció el Negociado según ordenado. Estando en posición de resolver, procedemos a así hacerlo.

## II.

Atendemos en primer término lo relativo a la notificación adecuada del dictamen mediante la cual el Negociado impuso la multa a la AEE.

Según AEE, al notificarle la *Resolución y Orden* expidiéndole la multa, el Negociado omitió apercibirle sobre su derecho a solicitar reconsideración y a cuestionar, mediante revisión judicial, sus determinaciones. Sostiene que, al no hacerlo, dichas notificaciones resultan inadecuadas e inoficiosas que no pueden activar los términos para solicitar reconsideración o acudir en revisión judicial.

---

[7] Posteriormente, aclaramos que, en virtud de nuestra Resolución de 22 de octubre de 2024, la paralización de los procedimientos se refería únicamente a la ejecución del pago de la multa impuesta a la AEE y el apercibimiento sobre multas adicionales.

Arguye que nuestra única opción es dejar sin efecto las *Resoluciones* de 13 de agosto y de 11 de octubre. No tiene razón. Elaboremos.

Ciertamente, toda resolución u orden final de una agencia administrativa debe apercibir a la parte de sus derechos a solicitar reconsideración o recurrir mediante revisión judicial.[8] Dichas deficiencias pueden privarnos de jurisdicción, pues el plazo para la revisión no ha comenzado a transcurrir. Sin embargo, nuestro Tribunal Supremo ha establecido que, ello de por sí no anula el dictamen y si la parte afectada recurre oportunamente sin incurrir en incuria[9], debemos resolverlo en sus méritos.[10]

En este caso, surge del expediente administrativo que la notificación de la *Resolución* mediante la cual el Negociado impuso las multas, no incluyó los debidos apercibimientos. Tampoco se incluyeron en la *Resolución* de 11 de octubre, mediante la cual se denegó la *Solicitud de Reconsideración*. Sin embargo, la AEE solicitó reconsideración ante el Negociado solo cuatro (4) días después de haber sido emitida la *Resolución* de 23 de agosto. Lo hizo con basta anticipación al vencimiento del término de veinte (20) días que concede la Sección 3.15 de la Ley Núm. 38-2014, para que una parte adversamente afectada por una determinación final de una agencia administrativa presente una solicitud de reconsideración. El

---

[8] *IM Winner, Inc.* v. *Mun. de Guayanilla*, 151 DPR 30 (2000).

[9] Se incurre en incuria cuando la parte actúa con dejadez o negligencia en el reclamo de un derecho, la cual en conjunto con el transcurso del tiempo y otras circunstancias que causan perjuicio a la parte adversa, opera como un impedimento en una corte de equidad. Véase, *Colón Torres* v. *A.A.A.* 143 DPR 119 (1997); *Aponte* v. *Srio, de Hacienda*, 125 DPR 610, 618 (1990); *Rivera* v. *Depto. de Serv. Soc.*, 132 DPR 240, 247 (1992); *García* v. *Adm. del Derecho al Trabajo*, 108 DPR 53, 59 (1978). La incuria es una doctrina destinada a impedir que una parte que no ha desplegado la debida diligencia en el ejercicio de un derecho cause daño a la parte adversa. Al determinar si una parte incurrió en incuria, se examina el transcurso del tiempo para impedir el ejercicio de la causa de acción, al igual que otras circunstancias antes de decretar la desestimación del recurso instado. Véase, *Pérez* v. *J.A.S.A.P.,* 139 DPR 588, 391 (1995); *Rivera Rivera* v. *Departamento de Serv. Soc.*, 132 DPR a la pág. 247; *Hernández Agosto* v. *Romero Barceló.* 112 DPR 407, 417 (1982).

[10] *Puerto Rico Eco Park, Inc.*, et. al., v. *Municipio de Yauco*, 202 DPR 525 (2019); *Horizon* v. *JTA.* Revisora, RA Holdings, 191 DPR 228 (2014); *Molini Gronau* v. *Corp.* PR Dif. Púb., 179 DPR 674, 686-687 (2010); *Comisión Ciudadanos* v. *G.P Real Property*, 173 DPR 998, 1015, 1020-1021 (2008); *lM Winner, Inc.* v. *Mun. de Guayanilla,* 151 DPR 30 (2000); *Carabarín et. al.* v. *ARPE,* 132 DPR 398, 958-959 (1993).

Negociado adjudicó la *Solicitud de Reconsideración* dentro del término de cuarenta y cinco (45) días contados a partir de su presentación. Atendida la misma, el 21 de octubre de 2024, un mes antes de que venciera el término para recurrir ante nos mediante revisión judicial, la AEE incoó el recurso de epígrafe.

Habiendo la AEE ejercitado, oportuna y vigorosamente su derecho a solicitar remedios respecto al dictamen en su contra, esgrimiendo en extenso los fundamentos por los cuales entiende que la multa no procedía, es totalmente innecesario devolver el caso al Negociado para que le advierta sobre unos derechos que ha ejercido efectivamente. Superado el aspecto jurisdiccional de umbral, procede atender el recurso en sus méritos. Acometamos la tarea.

III.

Adheridos a la norma de deferencia a las agencias administrativas en la imposición de multas o sanciones,[11] nos limitaremos a evaluar si la actuación del Negociado fue ilegal, arbitraria, caprichosa o en un abuso de discreción por excederse de lo permitido por ley o en ausencia de evidencia sustancial que la justifique.[12] No nos corresponde revisar la proporcionalidad de la multa con la conducta proscrita o si fue alta. Estas son consideraciones que debe tener la propia agencia.[13] Veamos.

Conforme el Art. 1.5(3) de la Ley de Política Pública Energética de Puerto Rico, Ley Núm. 17 de 11 de abril de 2019 (Ley Núm. 17-2019), el Negociado es el ente independiente especializado, encargado de reglamentar, supervisar, fiscalizar y asegurar el cumplimiento con la política pública energética del Gobierno de

---

[11] Véase, *Comisionado de Seguros de Puerto Rico* v. *Triple-S Salud, Inc.,* 191 DPR 536 (2014); *Com. Seg. P.R.* v. *Antilles Ins. Co.*, 145 DPR 226 (1998); *Associated Insurance* v. *Comisionado*, 144 DPR 425 (1997).

[12] *Com. Seg. P.R.* v. 145 DPR a las págs. 233-234; Véase, además, D. FERNÁNDEZ QUIÑONES, DERECHO ADMINISTRATIVO Y LEY DE PROCEDIMIENTO ADMINISTRATIVO UNIFORME 98 (2013 Colombia, Ed. Forum).

[13] *Kulkin* v. *Bergland*, 626 F.2d 181 (1cr Cir. 1980).

Puerto Rico.[14] Tanto la Ley Núm. 57-2014, como la Ley Núm. 17-2019, facultan al Negociado para establecer e implementar los reglamentos y acciones necesarias para garantizar la capacidad, confiabilidad, seguridad, eficiencia y razonabilidad en las tarifas del sistema eléctrico de Puerto Rico y establecer las guías, estándares, prácticas y procesos a seguir por los entes regulados. Además, el Negociado tiene autoridad para fiscalizar la calidad, eficiencia y confiabilidad del servicio eléctrico provisto por cualquier compañía certificada en Puerto Rico, de manera que se pueda garantizar una red eléctrica robusta que atienda las necesidades de la isla.

En lo aquí estrictamente pertinente, el Art. 6.3 de la precitada Ley Núm. 57-2014 concede al Negociado el poder y el deber de:

> (a) Fiscalizar y asegurar la cabal ejecución e implementación de la política pública sobre el servicio eléctrico en Puerto Rico;
> . . . .
> (c) Establecer e implementar los reglamentos y las acciones regulatorias necesarias para garantizar la capacidad, confiabilidad, seguridad, eficiencia del sistema eléctrico de Puerto Rico. . .
> (d) Fiscalizar la calidad, eficiencia y confiabilidad del servicio eléctrico provisto por cualquier compañía de energía certificada en Puerto Rico para garantizar una red robusta que atienda las necesidades de la isla;
> . . . .
> (k) Revisar y aprobar políticas, planes estratégicos y planes a corto, mediano y largo plazo relacionados con la planificación integrada de recursos energéticos en Puerto Rico, y fiscalizar el cumplimiento con los mismos;
> . . . .
> (o) Conducir vistas públicas, requerir y recopilar toda la información pertinente o necesaria para el adecuado desempeño de sus poderes y deberes;
> . . . .
> (s) Requerir a toda compañía de servicio eléctrico que esté certificada en Puerto Rico, que lleve, guarde y presente regularmente ante el NEPR aquellos récords, datos, documentos y planes que hieren necesarios para poner en vigor los objetivos de esta Ley;
> . . . .
> (bb) Llevar a cabo inspecciones, investigaciones y auditorías, de ser necesarias, para alcanzar los propósitos de esta Ley. . .[15]

---

[14] 22 LPRA § 1141d.
[15] 22 LPRA § 1054b.

Como parte de los poderes que le otorga la Ley Núm. 57-2014, el Negociado puede imponer multas a las compañías de servicio eléctrico, entre otras cosas, por el incumplimiento con sus órdenes. En tal sentido, el Art. 6.36 del mencionado estatuto, dispone:

(a) El Negociado de Energía podrá imponer multas administrativas por violaciones a esta Ley, a sus reglamentos y a sus órdenes, incurridas por cualquier persona o compañía de energía sujeta a la jurisdicción de la misma, de hasta un máximo de veinticinco mil dólares ($25,000) por día. Dichas multas nunca excederán del cinco por ciento (5%) de las ventas brutas, del quince por ciento (15%) del ingreso neto o del diez por ciento (10%) de los activos netos de la persona o compañía de energía sancionada. La cantidad que resulte mayor de las antes mencionadas, correspondiente al año contributivo más reciente, será la cantidad multada.

(b) Si la persona o compañía de energía certificada persiste en la violación de esta Ley, la Comisión podrá imponerle multas de hasta un máximo de veinticinco mil dólares ($25,000) diarios. En tal caso, y mediante determinación unánime de la Comisión, la misma podrá imponer multas de hasta el doble de las limitaciones a base de ventas, ingreso o activos establecidos en el inciso (a) de este Artículo y de hasta quinientos mil dólares ($500,000).[16]

Respecto al ámbito de la revisión judicial de las determinaciones del Negociado, el Art. 6.20 de la Ley Núm. 57-2014 establece que, todos los procedimientos para los cuales dicha Ley no contemple disposiciones específicas se regirán por las normas de la Ley de Procedimientos Administrativos Uniforme del Gobierno de Puerto Rico, Ley Núm. 38-2017 (LPAU).[17] Específicamente, la Ley Núm. 57-2014 refiere a la LPAU como el estatuto que habrá de regular los procedimientos para la adopción de reglamentos, los procedimientos adjudicativos, la revisión judicial, el proceso para la concesión de certificaciones y franquicias, las querellas de usuarios y entre compañías de energía, y los procedimientos de inspección.

Finalmente, en su Art. 6.5(c), la Ley Núm. 57-2014 advierte que, según dispuesto en la LPAU, las decisiones o resoluciones

---

[16] 22 LPRA § 1054jj.
[17] 22 LPRA § 1054s.

finales del Negociado en procedimientos adjudicativos estarán sujetas a revisión por este Tribunal de Apelaciones, siempre que ello no interfiera con la jurisdicción que conceda alguna ley federal a una agencia o entidad federal o al Tribunal de Distrito de Estados Unidos para el Distrito de Puerto Rico.[18] Al respecto, la Sección 3.14 de la LPAU dispone:

> Una orden o resolución final deberá ser emitida por escrito dentro de noventa (90) días después de concluida la vista o después de la presentación de las propuestas determinaciones de hechos y conclusiones de derecho, a menos que este término sea renunciado o ampliado con el consentimiento escrito de todas las partes o por causa justificada. La orden o resolución deberá incluir y exponer separadamente determinaciones de hecho si éstas no se han renunciado, conclusiones de derecho, que fundamentan la adjudicación, la disponibilidad del recurso de reconsideración o revisión según sea el caso.[19]

De otra parte, la Sección 4.1 de la LPAU indica que "[l]as disposiciones de esta Ley serán aplicables a aquellas órdenes, resoluciones y providencias adjudicativas finales dictadas por agencias o funcionarios administrativos que serán revisadas por el Tribunal de Apelaciones mediante Recurso de Revisión. . .".[20] En cuanto al término para presentar la solicitud de revisión judicial, la Sección 4.2 de la LPAU fija en treinta (30) días el plazo que tiene una parte adversamente afectada por una orden o resolución final de una agencia y que haya agotado todos los remedios provistos por la agencia o por el organismo administrativo apelativo correspondiente para presentar una solicitud de revisión ante el Tribunal de Apelaciones.[21]

IV.

En el presente caso, en virtud del poder que le confiere la Ley Núm. 57-2014, el Negociado dio paso a un procedimiento

---

[18] 22 LPRA § 1054d.
[19] 3 LPRA § 9654.
[20] *Id.* § 9671.
[21] *Id.* § 9672.

investigativo con el propósito de identificar las fallas recurrentes del sistema eléctrico de Puerto Rico y establecer las acciones que deben implementar las compañías que operan dicho sistema para remediarlas prontamente. Ante el incumplimiento injustificado de las tres compañías aludidas en presentar sus respectivos PPP en el término claro y definido establecido por el Negociado, este expidió las multas que hoy impugna la AEE. La imposición de las multas se hizo, no sin antes ser debidamente advertidas -mediante la *Resolución* del 13 de junio-, que dicha sanción podría resultar del incumplimiento en la presentación de los PPP en la fecha establecida.

Fue en este marco procedimental, que, amparado en las facultades conferidas por el Art. 6.36 de la Ley Núm. 57-2014,[22] el Negociado ejerció su autoridad sancionadora. Independientemente califiquemos la actuación informal y preeminentemente investigativa del Negociado, como parte de un procedimiento adjudicativo o cuasilegislativo, lo cierto es que el Negociado está ampliamente facultado para imponer multas y en este caso ejerció esa facultad adecuadamente. Todas las compañías incumplieron la directriz de presentar sus correspondientes PPP dentro del término que dispuso el Negociado. A pesar de que la multa impuesta a la AEE fue mayor que la de las demás compañías, esto se debió a que la AEE fue la que más días demoró en presentar el PPP requerido.

La justificación que esgrimió la AEE para impedir que se le multara, no nos convence como tampoco convenció al Negociado. El hecho de que la investigación de fondo buscara principalmente comprender las fallas del sistema en los incidentes del 12 de junio de 2024, relacionadas específicamente con la distribución, transmisión y generación de energía, no eximía, mucho menos por

---

[22] 22 LPRA § 1054jj.

su propia decisión, a la AEE de cumplir con la orden del Negociado. Tampoco nos persuade su argumento de que, por no aludirse a la generación hidroeléctrica en la orden original, no podía exigírsele su cumplimiento. Como bien señala el Negociado, la AEE debió asumir lógicamente, que su PPP respondería al sistema de energía que está bajo su control operacional.

En fin, no siendo la actuación del Negociado, ilegal, arbitraria, caprichosa ni haber incurrido en abuso de discreción, no intervendremos con la sanción impuesta. La evidencia sustancial que obra en el expediente justifica y sostiene su determinación.

V.

Por lo antes expuestos, se *confirma* el dictamen recurrido.

Notifíquese inmediatamente.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones